539 So.2d 803 (1989)
STATE of Louisiana and Office of the District Attorney of the Eleventh Judicial District, Plaintiffs-Appellees,
v.
James Lynn DAVIS, Defendant-Appellant.
No. 87-1048.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Writ Denied April 7, 1989.
William Cady, Shreveport, & Don Burkett, Dist. Atty., Many, & Ellis P. Adams, Jr., Baton Rouge, for plaintiffs-appellees.
Rebecca L. Hudsmith, New Orleans, for defendant-appellant.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
This suit raises questions covering Louisiana's administration of a national program for enforcement of child support obligations and the authority of prosecuting attorneys in Louisiana to be compensated from funds derived as a result of the program. The program, referred to generally as the IV-D program, is established under Title IV-D of the Social Security Act. The program in this State is administered through the Department of Health and Human Resources, Office of Family Security (DHHR). Under separate contracts with the district attorneys of Louisiana the DHHR engages the services of the district attorneys and their offices to enforce child support obligations. The contracts authorize payments to the office of the contracting district attorney to reimburse that office for its expenses, including salaries, incurred in pursuing the program. Salaries include salary or emolument to be paid the *804 district attorney himself. In addition to reimbursement, the contracts provide for payment to the offices of district attorneys a percentage of child support moneys collected. The State of Louisiana and the Office of the District Attorney for the Eleventh Judicial District (DeSoto and Sabine Parishes) brought this civil suit through the Attorney General of Louisiana to recover two large payments from IV-D funds made by the defendant to himself during the last few days he held the office of the District Attorney for the Eleventh Judicial District. The two payments totaled $42,315.86. The petition in this case alleged that the two payments constituted an illegal bonus or illegal and improper payment. The petition sought judgment requiring the defendant, James Lynn Davis, to return the $42,315.86 to his former office, the Office of the District Attorney for the Eleventh Judicial District (ODA).
The trial judge in this case went beyond the prayer of the petition and granted judgment to the State of Louisiana for the sum of $72,215.86. This sum is the total amount which the defendant paid to himself from the latter part of 1976 through 1984, including the $42,315.86 sought by plaintiffs, and which purport to have been paid under authority of the contracts with DHHR. The sweeping holding of the trial court presents extremely important policy questions affecting the life of the IV-D program throughout the State of Louisiana and the role of the district attorneys of the State in the program and their liability for all compensation they have drawn during previous years of working with the program. The trial court pitched its decision on a construction of state statutes to conclude that the defendant as district attorney was limited to receiving the state salary and parish supplements set by statute. The petitioners raise constitutional questions; they urge that the $42,315.86 received by defendant at the end of his term constituted an illegal bonus in violation of Article VII, Section 14 of the Louisiana Constitution (1974).

POSITION ON APPEAL
As noted above, the petition in this case was filed by the Attorney General of Louisiana on behalf of the State and the Office of the District Attorney for the Eleventh Judicial District, the present ODA. However, the suit is in reality for the benefit of the ODA which is a state constitutional office. The DHHR is not a party to this litigation and the State is only a nominal party. In the written reasons for judgment given by the trial court, it held that the defendant must return $72,215.86 with legal interest to the ODA. However, the judgment is in favor of the State of Louisiana. The defendant appealed. On appeal the Attorney General does not clearly ask for affirmance of the trial court judgment, and as we interpret the Attorney General's brief and oral argument made on his behalf, the Attorney General adheres to the position that only $42,315.86 should be returned to the ODA. An amicus curiae brief was filed with this court by the Louisiana District Attorneys Association. The Association urges that there is no prohibition against district attorneys receiving pay over and above the salary provided by state statute and the statutorily set salaries is a minimum only. The Association takes no position regarding the two payments totaling $42,315.86 which petitioner alleges are illegal or improper because they are bonus payments rather than earned salary. The defendant's petition on appeal is that none of the payments he made to himself from IV-D funds remitted to his office are constitutionally prohibited either as prohibited additional payments over and above the statutorily fixed salary or as prohibited bonus payments. Alternatively, the defendant pleads that, under the doctrine of equitable estoppel, he should not now be required to give back what the State, through DHHR, authorized in successive contracts from 1975 through 1984.

BASIC FACTS
Beginning in 1976 DHHR contracted with James Lynn Davis as the elected district attorney for DeSoto and Sabine Parishes which comprise the Eleventh Judicial District. Each of these yearly contracts *805 were confected after the defendant Davis submitted proposed budgets for reimbursement of his office for projected operating costs, including salaries, connected with the performance of the contract by ODA. In the annual contracts DHHR agreed to reimburse ODA the yearly amount of reimbursement agreed upon. In addition, DHHR agreed to pay or remit to ODA a percentage (typically 15%) of all support funds collected by ODA and referred to as incentive payments. The obligation assumed by ODA under the contracts was to initiate proceedings against noncustodial parents to establish obligations for spousal support through criminal court, civil court, juvenile court, URESA petitions and consent judgments and stipulations.
In addition to performing the functions listed above, the defendant (acting for the ODA) agreed to perform other services including administrative, managerial and record keeping services. The ODA was regularly audited by state auditors over some eight or nine years. No complaint was ever made by them of the periodic payment by defendant to himself or assistant district attorneys of compensation from IV-D funds remitted to ODA by DHHR. The auditors did complain of record keeping deficiences. The DHHR continued over these years to remit reimbursement payments and incentive payments to ODA.
We assume from the evidence that the same mode of operation has been followed over the years by DHHR through contracts with other district attorneys of the State.
The trial court found that from August 20, 1976 through December 28, 1984 the defendant wrote checks to himself from a separate account which we find was listed as "Mr. James L. Davis District Attorney IV-D Program" and maintained in the Peoples State Bank, Many, Louisiana. The trial court tabulated the checks drawn by the defendant in his favor as follows:

Date of
payment Amount Check Stub Explanation Check No.
08-20-76 $ 400.00 Incentive Program 65
10-10-77 400.00 Incentive 231
12-12-77 400.00 Incentive 259
12-20-77 400.00 Incentive 264
03-15-78 400.00 Incentive 296
07-18-78 400.00 Incentive 356
12-07-78 600.00 Incentive 422
02-09-79 300.00 Incentive 454
03-14-79 400.00 Incentive 467
06-07-79 400.00 Incentive 506
09-28-79 400.00 Incentive 554
03-20-80 300.00 Incentive 625
06-17-80 400.00 Incentive 659
09-17-80 400.00 Incentive 691
12-11-80 400.00 Incentive 726
12-16-81 500.00 Incentive 883
03-30-82 400.00 Feb. Salary Incentive 924
05-06-82 600.00 Salary for January 940
07-08-82 600.00 Salary 964
08-24-82 600.00 April Salary 979
08-24-82 600.00 May Salary 980
09-23-82 400.00 Salary 998
10-27-82 400.00 Bonus 1014
12-17-82 400.00 Bonus 1045
12-31-82 1200.00 (No notation on stub) 1056
12-31-82 1200.00 (No notation on stub) 1057
09-23-83 3000.00 Bonus 1186
11-01-83 1400.00 Salary 1208
11-30-83 3000.00 Incentive Atty. Fees 1226
05-15-84 600.00 Nov. Payroll 1004
05-15-84 600.00 Dec. Payroll 1005

*806
Date of
payment Amount Check Stub Explanation Check No.
05-15-84 $ 600.00 Jan. Payroll 1006
05-15-84 600.00 Feb. Payroll 1007
05-15-84 600.00 March Payroll 1008
05-15-84 600.00 April Payroll 1009
05-31-84 600.00 Salary 1018
06-29-84 600.00 Salary 1055
08-13-84 1200.00 Incentive 1063
08-31-84 600.00 IV-D Salary Incentive 1071
09-28-84 600.00 Sept. IV-D Salary 1096
10-31-84 600.00 Oct. IV-D Salary 1123
11-05-84 33741.12 * * *[1] 1135
11-30-84 600.00 IV-D Nov. Salary 1152
12-14-84 600.00 IV-D Dec. Salary 1158
12-28-84 8574.74 Incentive 1177
 __________
Total $72,215.86

The petitioners seek return of the payments of November 5, 1984 in the amount of $33,741.12 and December 28, 1984 in the amount of $8,574.74 or a total of $42,315.86. Petitioners do not seek return of $29,900 of the total of $72,215.86.
The defendant, James L. Davis, lost his bid for reelection in 1984 and his last day in office was December 31, 1984. He was succeeded by Don Burkett who heads the ODA which appears as plaintiff in this lawsuit.
We pretermit a recitation of other pertinent facts at this point. They will be covered in connection with discussion of points to which they are most pertinent.

ISSUES
The issues raised by the pleadings, evidence and the trial court's judgment and holding in its reasons for judgment are these:
1. Does the law of this State prohibit a district attorney in Louisiana from receiving any salary over and above the statutorily fixed salary provided in LSA-R.S. 16:10? (The trial court held that it did.)
2. If there is no constitutional prohibition against district attorneys receiving additional compensation over and above the amount provided in LSA-R.S. 16:10 and 264, were the payments made by defendant to himself on November 5 and December 28, 1984 illegal or improper as bonuses under Section 14 of the Louisiana Constitution (LSA-LA. Const. Art. VII, § 14)?
3. Is the defendant entitled to a setoff in the total amount of reimbursement funds allocated for his salary over the life of the several contracts but never paid to him? (As may be noted in the tabulation listed above, the defendant did not draw payment on a regular basis.)
4. Is the doctrine of equitable estoppel applicable to any portion of the $72,215.86 which the trial court held should be returned to the ODA?

DISCUSSION OF ISSUES

I.
The trial court did not respond to the petitioner's constitutional argument. The trial court simply held, without citation of authority, that the defendant's salary was fixed by statute and he could not be paid *807 any additional income. The trial court reviewed the duties of the defendant as district attorney and found that he did not contract to do anything beyond what he was bound to do by law other than functions having to do with collection, disbursement, remittance and accounting to DHHR for collections made under the program. The trial court then made the following holdings:
"The salary of the district attorney of the Eleventh Judicial District is fixed by statute, and when the salary and supplements are fixed by statute, this salary is in lieu of all other fees. See La.R.S. 16:4. La.R.S. 16:10 fixes the annual salary of the district attorney at $35,533, and La.R.S. 16:264 fixes the supplemental salary at $4,750.
"The funds paid by DHHR to the ODA were state fund [sic] and one agency of the state cannot by contract with another agency of the state change public funds to private funds in this situation. Whatever this defendant did in furtherance of the contract the ODA entered into with DHHR, he did in his official capacity as district attorney, a state official, for which he received his statutory salary.
"This court hold [sic] that this defendant could not from the funds his office received from DHHR legally pay himself as [sic] salary, incentive, bonus, or otherwise. Accordingly, this court holds the payment by the defendant herein of the total sum of $72,215.86 (See Footnotes 1 & 2) to himself was an illegal and unlawful conversion of public funds which must be return [sic] to the Office of the District Attorney of thd [sic] Eleventh Judicial District, together with legal interest thereon from date of each payment to date of restoration. Defendant is to pay all costs of court."
LSA-R.S. 16:10 provides:
"10. Annual salary of district attorneys payable by state
"A. The annual salary of the several district attorneys through the state of Louisiana is hereby fixed at thirty-five thousand five hundred thirty-three dollars payable monthly by the state treasurer upon the warrant of the district attorney.
"B. The provisions of this section shall not be construed to repeal, supersede or affect any existing law or laws or provisions of any statutes which have been enacted or may be enacted by the legislature fixing the compensation to be paid the district attorneys throughout the state by the governing authorities of the several parishes of the state. Any such compensation paid by the governing authorities of the several parishes of the state shall be in addition to the sum which the state treasurer is required to pay under the provisions of this section."
LSA-R.S. 16:264 provides that the District Attorney for the Eleventh Judicial District shall receive an additional salary, over and above what shall be paid by the State, of $4,750 payable by the parishes of DeSoto and Sabine in the amounts of $2,375 each.
We see nothing in these statutes to suggest that the mere fixing of amounts to be paid by the state or the parishes served by a district attorney means that no other additional emolument may be paid to district attorneys. A specific exception is made in LSA-R.S. 16:14 to clarify the fact that parish supplementary payments may be made. Various other state statutes authorize and provide for additional payments to district attorneys.
LSA-R.S. 15:571.11 (Criminal Court Fund) provides that the district attorney shall be paid 12% of the amount of fines collected or bonds forfeited "to be used by the District Attorney in defraying such expenses of his office as in his discretion may be necessary."
A similar statute, LSA-R.S. 16:16, taxes as costs in criminal cases a $10 fee which is to be paid to the office of the district attorney to be used at his discretion in defraying the expenses of his office.
The legislature provided for a worthless check collection fee in LSA-R.S. 16:15 with similar purposes, but in that instance the legislature specifically provided that funds derived through collection of such fees should not be used to supplement the salary *808 of the district attorney or his assistants. This proviso would not have been necessary if there was a general prohibition against supplementing salaries of district attorneys beyond the state salary and parish supplemental salary fixed by statute.
We hold that the narrow ground on which the trial court pitched its decision is incorrect. We hold that the statutory fixing of district attorneys salaries and parish supplemental salaries are not meant to limit them to that amount of income for the performance of their duties. It seems to us that they are meant to instruct the State Treasurer and the parish governing authorities what should be paid. In the case of parish supplemental salaries this appears to be only a minimum. LSA-R.S. 16:14.
For policy reasons we are impelled to favor validating the contracts made between DHHR and district attorneys of the State. If the trial court is correct, no district attorney in Louisiana may receive any payments, reimbursements or incentive, from IV-D fund sources. Most likely the same would apply to assistant district attorneys working with the program. Affirmation of the trial court's ruling could well result in jettisoning the IV-D program, at least insofar as participation of the offices of district attorneys is concerned. The decision poses serious liability for all district attorneys and assistants who have received payment from IV-D funds at any time. Under the trial court's decision they are liable for such funds and could be required to return them to the ODA from which they are paid.
As we understand the position of the Attorney General and the present ODA, it was not their intention to destroy the IV-D program. Their only motivation and objective was to obtain return of what they allege were bonus payments as distinguished from earned payments.
A further reason assigned by the trial court for its holding (or perhaps as part of its general reasoning) was the holding that the DHHR could not transfer state funds from that agency to another and by contract change public funds into private funds. This argument overlooks the fact that public funds always become private funds when they are paid in exchange for goods and services. This applies to the salary of the Governor of the State down to the least employees. The payments made to DHHR in the case sub judice were not made directly to the defendant in his individual capacity. They were made to him as district attorney and as administrator of the IV-D program in his judicial district. No IV-D funds became private funds, including salary or income of the district attorney, until the district attorney disbursed them.
If the IV-D program is valid, then the expenditure of funds by district attorneys for any goods and services reasonably related to effectuating the program should be valid.
The trial court cited no authority for its holding that one agency of the state could not by contract with another agency change public funds into private funds. The only case which might support the trial court's ruling on this point which we have found is City of Port Allen v. Louisiana Mun. Risk Management Agency, 439 So.2d 399 (La.1983). While the opinion in the case contains some strong language suggestive of a broad holding prohibiting state agencies from transferring funds between them even for public purposes, we do not read the case to be that broad. In any event, we distinguish the case. In City of Port Allen the Supreme Court held the basic provision of the constitution prohibiting donation of public funds to any personal agency, public or private, LSA-Const. VII, § 14(A), "is violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so." In that case the political subdivision whose funds would be required under a state statute to benefit other government bodies sought a declaratory judgment holding the statute unconstitutional. The statute would have required payment by the City of Port Allen to other political subdivisions to cover their worker's compensation and liability claims without direct benefit to the City of Port Allen.
*809 In the case sub judice the DHHR did derive benefit from the payment of funds to the ODA, the effectuation of a social program promoted by it in conjunction with the federal government which supplied 70% of the funds. Moreover, in City of Port Allen the agency sought to be held for contribution of funds was the complainant. The DHHR is not a party to this suit, has not asked for return of any funds and, according to the evidence, refused an attempt at refund of $33,035.57 by the defendant.
Although the Supreme Court in City of Port Allen questioned the applicability of Section 14(C) of the constitutional provision in the context of that case, we hold that it would be most appropriate to apply it in this case if it should be necessary to avoid a violation of Section 14(A) and if the ODA should be classified as an agency of the state. Actually, the district attorney is a constitutional office of the state and represents the state within the judicial district he services. LSA-Const. Art. V, § 26. See also, in the context of child support enforcement, LSA-R.S. 13:1642, 13:1652, 13:1672, 13:1673, 13:1678 and 13:1694. LSA-R.S. 16.1 provides that the district attorney shall represent the state in his district in all civil actions and criminal prosecutions. Since the State of Louisiana has chosen to embark on the social program encompassed by the Title IV-D program, what state officer or office is better equipped and situated to put it in force than the district attorney and his office. The only alternatives would be for the state to authorize the appointment of attorneys within the DHHR to go into the various parishes to do the legal and administrative work or to contract with private attorneys to do the same.
We do not believe City of Port Allen condemns the kind of cooperative endeavor such as we find in the case sub judice. See Lewis v. Spurney, 456 So.2d 206 (La.App. 4th Cir.), writs denied, 457 So.2d 1183 and 458 So.2d 488 (La.1984) and Morial v. Orleans Parish School Board, 332 So.2d 503 (La.App. 4th Cir.), writ denied, 337 So.2d 530 (La.1976). In any event, a realistic view of the arrangement discloses that the State of Louisiana acts directly in a judicial district through the district attorney as the constitutionally and statutorily designated state officer to conduct the program. If the State chooses to designate the DHHR as the conduit to cooperate with the federal government to collect and disburse funds to the district attorneys and to generally coordinate and supervise the program to include laying down rules to govern operations including accounting procedures, we see no constitutional objection to the arrangement.
As a final consideration we address a further holding of the trial court, namely the statement that "[w]hatever this defendant did in furtherance of the contract the ODA entered into with DHHR, he did in his official capacity as district attorney, a state official, for which he received his statutory salary." Presumably, the trial court directed this holding at both reimbursement funds and incentive funds. There is some suggestion in the Attorney General's brief to the effect that the defendant would not be entitled to any incentive funds. If this were true, and certainly if the trial court's view is correct, the entire Title IV-D program in the State of Louisiana would be invalidated under the present setup. We reject both propositions, that is, that a district attorney may not receive either reimbursement or incentive payments because they would be unearned.
The trial court itself recognized that the contract with DHHR required the defendant and the ODA to perform certain services not within his prescribed duties. We have no qualitative or quantitative evaluations to establish that these nonstatutorily prescribed functions would not be sufficient to support additional compensation to the district attorney. Actually, the matter comes down to an arrangement for funding. This is certainly true for the expenses other than salaries and salaries for assistant district attorneys. While the philosophy behind the payment of incentive funds (essentially a contingent fee arrangement) may not be clear, and while the permitted use of incentive funds may not be spelled *810 out, we cannot say the payments are not earned.
We note again that the DHHR contracted for payment of IV-D funds and it makes no claim in the suit. The petitioners only seek to have the sum of $42,315.86 returned to the present ODA. If incentive payments were illegal as unearned, they should not be returned to the present ODA because they could not be used by that office for any purpose.
The suit filed in this case was evidently sparked by the office of the Legislative Auditor. On page 4 of the Legislative Auditor's report (Joint Exhibit 14), the auditor finds that the two payments totaling $42,315.86 were constitutionally prohibited bonuses. It did not find that incentive payments were unconstitutional. It recommended that the defendant's successor take steps to collect the $42,315.86 from the defendant. Whether incentive payments are unauthorized is a different question from the question of whether the two payments in question were illegal as bonuses. As we read the plaintiffs' petition, it does not challenge incentive payments as such, but only challenges the payment of alleged bonuses. The trial court's ruling struck at all payments made to the defendant. We deem this holding to be error. We confine ourselves to the question of whether the defendant paid himself unauthorized bonuses.

II.
We now move to the constitutional question proper, that is, whether LSA-Const. Art. VII, § 14 comes into play. The pertinent provisions of Section 14 are as follows:
"§ 14. Donation, Loan, or Pledge of Public Credit
Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.
(B) Authorized Uses. Nothing in this Section shall prevent (1) the use of public funds for programs of social welfare for the aid and support of the needy; (2) contributions of public funds to pension and insurance programs for the benefit of public employees; or (3) the pledge of public funds, credit, property, or things of value for public purposes with respect to the issuance of bonds or other evidences of indebtedness to meet public obligations as provided by law.
(C) Cooperative Endeavors. For a public purpose, the state and its political subdivisions or political corporations may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual."
The petitioners urge that the two payments defendant made to himself at the end of his term of $33,741.12 and $8,574.74 were bonuses and were not earned. Without question, bonuses paid from public funds are not legal as they are in violation of Subsection (A) of Section 14 set forth above. Picard Construction Co. v. Board of Commissioners of Caddo Levee District, 161 La. 1002, 109 So. 816 (1926); Frost Lumber Industries v. Pickel, 181 La. 180, 159 So. 316 (1935); McElveen v. Callahan, 309 So.2d 379 (La.App. 3d Cir.), writ denied, 313 So.2d 602 (La.1975); City of Port Allen v. Louisiana Mun. Risk Management Agency, 439 So.2d 399 (La. 1983) and Crist v. Parish of Jefferson, 470 So.2d 306 (La.App. 5th Cir.), writ denied, 474 So.2d 948 (1985).
The position of the defendant is that the payments in question were not bonuses but, in any event, he is entitled to a setoff in the amounts he was legally entitled to be paid but which he never paid to himself.
In McElveen v. Callahan, supra, this court had under consideration facts somewhat similar to those presented in the case sub judice. There a ward marshal paid extra compensation over and above regular salaries to three employees of his office. The payments were made just before the *811 defendant marshal went out of office and was succeeded by the plaintiff marshal. The plaintiff marshall sued the defendant marshal and the three employees to recover the extra compensation paid. The 1921 Louisiana Constitution governed the case and that constitution contained a prohibition against payment of "extra compensation" not carried over into the 1974 Constitution. The 1921 Constitution did contain a provision similar to Subsection (A) of Section 14 of the 1974 Constitution. The marshal's office received a portion of court costs which were administered by the marshal. The defendant contended that the payments were not extra compensation but were to compensate the employees for raises in salary they had been promised but which had not been made. In McElveen this court (with Judge Fruge dissenting and Judge Domengeaux concurring) referred approvingly to certain opinions of the Attorney General to the effect that payments to be legal must be in the form of salary increases for the future, not extra compensation for past services rendered.
We are presented with a factual determination: were the two payments of $33,741.12 and $8,574.74 which defendant paid to himself extra compensation for past services rendered as petitioners contend, or could they be deemed salaries for services rendered but for which no salary was drawn when the services were rendered?
The evidence in this case includes ten contracts (Joint Exhibits 1-10) between the State of Louisiana, through DHHR, and James Lynn Davis, District Attorney, beginning with the period December 1, 1975 through June 30, 1976. In each of these contracts the State agrees to reimburse the ODA a specific amount for operating costs for actual cash disbursements. The amount is arrived at according to a budget attached to the contract.[2] The budgets generally cover personal salaries, personal fringe benefits, personal travel costs, costs of consumable goods, rental, lease or use cost of equipment and other costs for which rent was specified. A budget breakdown lists the specific salaries to be paid to personnel, which in the first contract covered an assistant district attorney and a secretary and bookkeeper.
Beginning with the contract for July 1, 1977 to June 30 1978 the contracts budgeted an annual salary of $7,500 for the district attorney himself. This was based on 25% of total district attorney time spent on IV-D work times a monthly salary of $2,500 for 100% of time spent. The annual budget was increased to $8,450.60 beginning July 1, 1983. Consequently, the total budgeted for the district attorney may be tabulated as follows:

Joint
 Amount
Exhibit No. Period Budgeted
 3 7-1-77 to 6-30-78 $7500.00
 4 7-1-78 to 6-30-79 7500.00
 5 7-1-79 to 6-30-80 7500.00
 6 7-1-80 to 6-30-81 7500.00
 7 7-1-81 to 6-30-82 7500.00
 8 7-1-82 to 6-30-83 7500.00
 9 7-1-83 to 6-30-84 8450.60
 10 7-1-84 to 6-30-85 8450.60

Allocating one-half of the budgeted amount for the 1984-85 contract period to the Davis administration, we conclude that at least $57,675.90 was budgeted for the IV-D reimbursement of the ODA for the defendant's salary. It is not clear from the record whether the district attorney's salary was actually paid to ODA month by month or year by year. The contracts provided that payment of both reimbursement amounts and incentive payment amounts were to be made to James L. Davis, District Attorney, Eleventh Judicial District. Payment was to made upon the furnishing of the district attorney's sworn affidavit identifying expenditures made and costs incurred. The apparent accepted method of disbursement of the funds once paid to the district attorney was for the district attorney to make the payment for specific items including salaries.
*812 The defendant maintained one bank account in which he commingled reimbursement funds and some incentive payments. Salaries and other disbursements were made by checks drawn on the account which was in the name of "Mr. James L. Davis, District AttorneyIV-D Program" in the Peoples State Bank, Many, Louisiana. Apparently, the defendant placed some incentive payments in another account. He alleges in his brief that as of July of 1981 he had accumulated $25,000 in undisbursed incentive funds in the IV-D checking account and that he directed that this amount be deposited in a separate interest bearing account. The defendant's bank records show deposits from "DeSoto Federal" of $32,946.31 on November 5, 1984 and $33,035.57 on November 11, 1984. According to the check stub for check No. 1147 dated November 20, 1984 the defendant wrote a check to "La. Dept. of Health and Human Resources." The defendant testified he attempted to refund this sum to DHHR but it was returned to him. Evidently this amount remained in the checking account, and the account contained $33,800.06 when it was closed on January 11, 1984 on instructions from Don Burkett, the new district attorney, and transferred to another account.
We are unable to follow all of defendant's figures set forth in his brief, but we can make some observations of our own. As noted above, from July of 1977 the budget approved by DHHR for defendant's salary to be as a reimbursement was $57,675.90. Using the findings of the trial court, the defendant paid himself out of his bank account over eight years the sum of $29,900, exclusive of two payments alleged to be bonus payments ($72,215.86 less $42,315.86). Under defendant's argument, he earned $27,575.90 ($57,675.90 less $29,900) which was never paid to him.
We have given serious consideration to defendant's contention that the sum of $42,315.86 which he paid to himself in two payments at the end of his term constitute budgeted salary due him which had not been paid. Our review of the facts leads us to the conclusion that there is some merit to defendant's claim and his claim is not at all unreasonable. In any event, his actions do not indicate culpability. Perhaps if defendant had maintained detailed records to support the fact that DHHR was billed on a current basis throughout his tenure as district attorney for the amount of his budgeted salary for each contract period, we could conclude the two payments in question were indeed for services performed within the several contract periods. After careful consideration we conclude that defendant has not sufficiently proven his claim.
In the final analysis we conclude that we cannot view the two payments in question as payment of back salary regardless of defendant's intentions. While the defendant did not regard the payments as bonuses, we regard them as bonuses because we cannot find sufficient justification from the evidence to find otherwise. During the existence of each contract, the situation was under the control of the defendant. If he did not draw the amount of his budgeted salary from the State, he could have. If he did draw it, he had only to write a check to himself for the salaries as he earned them. We hardly think wise policy would permit a district attorney to catch up in one, or two, lump sums for a total sum of over $42,000.
As an alternative argument the defendant contends that he is entitled to a setoff in the total amount of reimbursement funds allocated for his salary over the life of the contracts but never paid to him. We regard this as essentially the same as the argument that the two payments are merely payment of back salary. It is the same proposition stated in different terms.
The equitable estoppel argument asserted by defendant could only apply to payments made to him other than the two bonus payments. If the trial court's decision was correct, then the estoppel would be good for the reason that the trial court held all payments were illegal. Inasmuch as we conclude that the basis for the trial court's holding was erroneous, the defense of estoppel is not needed. Under the circumstances we need not address the question.

*813 CONCLUSION
The basis for the trial court's ruling was erroneous. Therefore, the trial court's judgment should be amended to require only that the defendant be required to return the sum of $42,315.86 to the ODA with interest.
We recast the judgment of the trial court to effectuate our amendment.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the State of Louisiana through the Office of the District Attorney for the Eleventh Judicial District for the State of Louisiana and against the defendant, James Lynn Davis, in the full sum of Forty-two Thousand Three Hundred Fifteen and 86/100 Dollars ($42,315.86), together with legal interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this judgment be discharged by remitting the amount owed to the Office of the District Attorney for the Eleventh Judicial District for the State of Louisiana.
The costs of this appeal are assessed one-half to the Office of the District Attorney for the Eleventh Judicial District of the State of Louisiana and one-half to the defendant.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] The trial court listed the check stub information for check number 1135 as "This check payable to J.L. DavisA Prof. Law Corp. Reimbursement Campaign Expenses from Incentive Fund." This is substantially correct insofar as the check stub is concerned. That is not the manner in which the check itself was made out. The check was drawn to the order of "James Lynn Davis." In the blank indicated "For" the entry is "Incentive." The check was deposited in the checking account of James Lynn Davis, Professional Law Corporation. The defendant testified that the check stub notation was intended as information for his accountant. On its face, check number 1135 listed the defendant individually as payee, and the check stub notation is, in our opinion, not relevant to the issues in this case.
[2] The amount which DHHR agreed to pay ODA in each contract was a percentage of the total budget and the remainder came from agency match. For example, for the contract period July 1, 1982 and ending June 30, 1983, DHHR agreed to reimburse from IV-D funds 75% of the total budget, $38,686.40 of a total budget of $51,581.98. Agency match was responsible for $12,895.49. See Transcript pages 16, 23 and 24.