Dear Mr. Boland:
Reference is made to your recent request for the opinion of this office regarding the State Civil Service Commission's consideration of a pay plan for state classified employees, which plan would provide a supplemental payment to such employees for work performed between July 1, 1994 and November 30, 1994. As you have pointed out, the Commission's authority to adopt pay plans can be found in La. Const. Art. X, Sec.10(A)(1).
According to your letter, the amount of this one time supplemental payment would be five (5%) percent of the employee's annual salary determined as of November 30, 1994, with a maximum of $1,200. You further advise that the supplemental payment would be prorated based upon the period of employment between July 1, 1994 and November 30, 1994. Additionally, it is our understanding that an employee would only be eligible to receive the payment if the employee remains employed on the date the pay increase is distributed, which date will be after November 30, 1994.
The question presented is whether such a pay plan, under the conditions described above, constitutes a donation prohibited by La. Const. Art. VII, Sec. 14(A). La. Const. Art. VII, Sec.14(A) pertinently provides:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
This office has consistently opined that the payment of a bonus, or any other gratuitous, unearned payment to public employees is prohibited, as same would be tantamount to a donation. Attorney General's Opinions Nos. 92-282, 83-940A, 81-1329.
However, this office does not consider Art. VII, Sec. 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation, is really a factual determination.
Pertinent in this regard is the decision rendered in State v. Davis, 539 So.2d 803 (La.App. 3rd Cir. 1989), w.d. 541 So.2d 840. In Davis, suit was brought by the Attorney General's office to recover certain payments from child support enforcement program funds, which payments were made by a former district attorney to himself during the last days he held office. The state sought to obtain return of ". . . bonus payments as distinguished from earned payments". The court stated:
 "We are presented with a factual determination: were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered but for which no salary was drawn when the services were rendered?"
Also pertinent is McElveen v. Callahan, 309 So.2d 379 (La.App. 3rd Cir. 1975), wherein the court had to determine whether certain payments made by a marshall to three of his employees were in violation of La. Const. (1921) Art. IV, Sec. 12, a provision quite similar to present Art. VII, Sec. 14. The court stated:
 "We affirm the finding of fact by the trial judge that the payments made by the marshall to his employees were bonuses, disguised as compensation for extra services or overtime. (Emphasis added).
With regard to the facts presented, we are aware that the employees of this State have not had a general pay increase since July of 1990, and believe they deserve a pay increase. We are also advised that the Civil Service Commission has proposed a 5% increase to the Governor, which plan awaits his action.
It is our opinion that the proposed pay plan cannot be construed as an attempt by the Commission to make a "donation" to state employees. Rather, the supplement would be earned compensation.
We are aware that the legislature has specifically provided funding for the proposed pay plan in accordance with the provisions of House Bill 1, the Appropriations Bill, the pertinent provisions of the enrolled version of which are attached hereto. As such, the proposed pay plan is "pursuant to legislative scheme" (Morial, infra.) as well as in accordance with the constitutional authority vested in the Commission.
In this regard, we direct your attention to the decision styled Morial v. Orleans Parish School Board, 332 So.2d 503 (La.App. 4th Cir. 1976), writ denied, 337 So.2d 530 (1976), wherein the provisions of R.S. 17:1201-1212, which provide a formula for determining the amount to be paid a teacher who is absent on sick leave for a period in excess of her accumulated sick leave days, were held constitutional as a "legislatively created benefit, earned by virtue of the employment itself."
The Morial case interpreted La. Const. (1921) Art. IV, Sec. 12; however, the Supreme Court, in City of Port Allen v. Louisiana Municipal Risk Agency, Inc., 439 So.2d 399 (La. 1983) held that the 1921 constitutional provision "was virtually identical to the present Art. VII, Sec. 14(A)."
Furthermore, City of Port Allen upheld the Morial decision and distinguished it from those cases which hold that the Constitution is violated whenever the state or a political subdivision gives up something of value when it is under no obligation to do so. The Court stated, in footnote 6 of the City of Port Allen decision, that even though the teacher received pay for a period in excess of her sick leave, "this was still `earned' compensation, not a gratuity, pursuant to the legislative scheme."
In accordance with the above referenced authorities, in particular the Morial and City of Port Allen decisions, it is the opinion of this office that the proposed pay plan does not violate the provisions of La. Const. (1974) Art. VII, Sec. 14. The payments contemplated by the pay plan are, in our opinion, "earned compensation" pursuant to a legislative scheme.
Despite our opinion, we feel compelled to call Crist v. Parish of Jefferson, 470 So.2d 306 (La.App. 5th Cir. 1985), to your attention. Therein, "terminal leave compensation" provided for by an ordinance of the Parish of Jefferson was held to be "either a gratuitous or remunerative donation", and, therefore, violative of Art. VII, Sec. 14. This office is unable to reconcile the decision rendered by the appellate court in Crist with the decision rendered by the Supreme Court in City of Port Allen. The Crist decision distinguishes the Morial decision on the basis that Morial was decided under the 1921 Constitution, as opposed to the 1974 Constitution. However, that distinction is contrary to the Supreme Court's City of Port Allen decision, which upheld Morial, and declared the pertinent 1921 and 1974 constitutional provisions to be virtually identical.
We trust this adequately responds to your request.
Yours very truly,
RICHARD P. IEYOUB Attorney General RPI:JMZ:jav 0441n