Dear Inspector General Lynch:
You have requested an opinion of the Attorney General regarding a one-time salary payment made by the Port of New Orleans ("Port") to its Executive Director, J. Ron Brinson. You ask whether the factual circumstances under which the one-time payment was made constitutes the payment of a bonus in violation of Article VII, Section 14 of the Louisiana Constitution of 1974. In addition, you ask whether the procedures by which payment was authorized by the Board of Commissioners of the Port of New Orleans ("Board") constitutes a violation of the Louisiana Open Meetings Law.
The factual scenario presented by your office and upon which this opinion is premised, indicates that on December 16, 1994, a written memorandum was directed from Port Chairman William A. Slatten to Russell W. Honsinger, Director of Finance and Accounting, which stated:
 "After consultation with and concurrence of the members of the Board, you are authorized and directed to make a one time payment to J. Ron Brinson of 10% of his gross compensation in accordance with the terms of his personal services contract and for past performance of his duties. Such one time payment shall be made at the time of the first pay period in January, 1995." (Emphasis added.)
The employment contract between Mr. Brinson and the Port's Chairman was entered into pursuant to the authority granted to the Chairman by the Board as evidenced by an excerpt of the minutes of the Board's meeting of December 16, 1993. A review of the minutes reflect that the contract was authorized for a term ending on December 31, 1996. It provided for a 5% increase in annual salary. The minutes further reflect that there will be no changes in salary structure and overall benefit package. Further, the minutes call for the Board's By-Laws to be amended to require that the contract be reviewed every eighteen months in consultation with members of the Executive Committee.
We have reviewed the provisions of the "EMPLOYMENT CONTRACTFOR POSITION OF PRESIDENT-CHIEF EXECUTIVE OFFICER OF THE PORT OFNEW ORLEANS BETWEEN THE BOARD OF COMMISSIONERS OF THE PORT OF NEWORLEANS AND J. RON BRINSON" ("Contract"). It provides for an annual base salary which may be adjusted for meritorious performance and market conditions. It further provides for additional compensation up to 35% of his annual base salary to be applied to long-term benefits to be calculated prospectively beginning on December 15th of each year for the following twelve months.
The issue of whether the one-time payment constitutes a bonus is controlled by Article VII, Section 14 of the Louisiana Constitution of 1974 which provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
This office has consistently opined that the payment of a bonus, or any other gratuitous unearned payment to public employees is prohibited, as same would be tantamount to a donation. In accord are Attorney General Opinion Nos. 92-295, 92-282, 89-190, 88-344, 86-639, 83-940A, 81-1329 and 80-806.
Essentially, all of these authorities cite the well-established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the opinions cited above were found to be equally invalid.
Conversely, this office does not consider Article VII, Section 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position inState v. Davis, 539 So.2d 803 (La.App. 3rd. Cir. 1989), Writ Denied. Therein, the Court held:
 "We are presented with a factual determination: were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered but for which no salary was drawn when the services were rendered?" (Emphasis added.)
We turn now to a review of previous opinions issued by this office which distinguish between valid and invalid factual supplemental pay scenarios.
Opinion No. 80-1095 discussed the legal authority for the City of Monroe to increase the salary of its City Judge. The City had awarded cost of living increases to all City employees for the previous six years, excluding the judge, under the mistaken belief that the judge's salary was fixed by law and could not be increased. The opinion held that the City could have included the judge in its annual cost of living increases to employees, but failed to do so. The City could correct his exclusion in anyfuture salary increases. Thus, the judge had already been compensated for past services rendered and was not entitled to a retroactive increase for these services. Any salary adjustment would have prospective application only.
Opinion No. 80-806 addressed the issue of whether a municipality could grant retroactive salary adjustments for its public officials. The adjustment was to be a reimbursement for departmental directors who received a less than average salary adjustment between November 1, 1979 and June 2, 1980. Thus, the reimbursement would, in effect, be a lump sum payment for services previously compensated. The author concluded that payments, to be legal, must be in the form of salary increases for the future, not extra compensation for past services rendered.
Opinion No. 86-639 dealt with retroactive salary increases to employees of a parish library. The payments would represent salary increases from the time the Library Board of Control contingently adopted a salary proposal to the time the money actually became available from reserve legal fees. Therein, the author concluded that such payments would constitute renumeration for services already rendered and compensated — a violation of Article VII, Section 14. Thus, the payments could not be paid retroactively, notwithstanding the fact that the Library Board had previously approved the increases since said approval was contingent upon obtaining the funds.
Opinion No. 88-344 relates to salary adjustments for three City employees who had worked thirty hours per week prior to 1987. A new administration increased their schedule to thirty-five hours per week without granting an increase in salary for the additional hours. Subsequent to the Mayor's resignation, his successor reduced the employees' work week back to thirty hours. Again, there was no change in their compensation. The issue was whether the new Mayor could authorize payment of additional compensation for the extra five hours per week worked by the employees. The opinion held that:
 ". . . absent any agreement with the employees, no overtime or extra compensation must be paid if the number of work hours per week do not exceed forty hours."
Since the employees had already received compensation for the hours they worked in 1987, they could not receive any additional compensation without the City being in violation of Article VII, Section 14.
Opinion No. 89-112 discussed the authority of a Sheriff providing modest additional compensation for firearms proficiency, vehicle safety, education and physical fitness. The author concluded that the additional compensation was part of an incentive plan justified by a rational relation to a public purpose and benefit, and by the proportionality of the incentive pay awarded to the public benefits realized as a result of said program. The author notes:
 "The achievements resulting in the payment of incentive pay are beyond the scope of ordinary duties. The higher standards of firearm proficiency and safety, vehicle safety, college academic work relating to law enforcement, and greater physical fitness, promote the protection of the lives of the deputies and the public they serve, potentiate the investigative and enforcement skills of the deputies, and save the taxpayer money in decreased incidence of vehicle accidents and lower costs due to the improved health and job performance of the deputies. Most importantly, the incentive program tends to project these higher standards of professionalism into the future as the regular and expected performance, as more and more deputies participate to enjoy the incentive benefits. The modest amount of public funds used to induce this higher professionalism is proportionate and constitutionally sanctioned."
Opinion No. 89-328 analyzed two bonuses given to the administrator of a city-owned hospital. The author distinguishes between bonuses which are simply unconstitutional spontaneous payments for past performance from additional compensation which is contractually stipulated based upon objective criteria for future performance of public benefit beyond that required by normal duties.
Opinion No. 90-128 recognized a school board's authority to institute incentive pay plans which promised additional, but reasonable future compensation, for future
performance by a public employee which is of a demonstrable public benefit. To meet constitutional muster, the program must be formal; i.e., it must be adopted formally by the school board in writing. The grounds for additional incentive pay must be objective criteria clearly stated. Finally, the program must have prospective effect only, with regard to future performance by employees. Thus, if the amount of the incentive award or pay is reasonable in relation to the nature of the employee performance and the public benefit realized, then it will qualify as compensation rather than simply spontaneous payments for past performance. In accord is Opinion No. 92-175.
Opinion No. 92-295 deals with an incentive pay plan for hospital employees, providing for a bonus of a fixed percentage of their salary based upon the hospital's overall financial performance at a pre-determined level. In striking down the plan, the author held:
"In response to a similar opinion request, Opinion No. 89-112 opined that an incentive pay plan could pass constitutional muster if the incentive pay was awarded for employee achievements beyond the scope of ordinary duties. However, Opinion No. 328 opined, `If the bonuses are simply spontaneous payments for past performance, they are unconstitutional donations of public funds.'
The information you have provided to us on the incentive pay plan proposed for Abbeville General does not appear to meet constitutional criteria, since it is the Hospital's overall financial performance rather than the individual employee's extraordinary effort which is the determinant of extra pay."
Opinion No. 93-586 addressed a unique factual situation wherein salaries for professional and non-professional employees of the St. Tammany Parish School Board were set by mathematical formula prospectively in advance of the services performed by these personnel during the 1992-1993 school year. The formula set a "base" salary for each employee and also a certain share of a percentage of whatever undedicated general fund balance remained at the end of the year. Thus, although the exact amounts of the salaries were not known at the beginning of the year, the salaries were set at that time to be mathematically ascertainable in operation on the future condition of the general fund.
The end-of-year undedicated general fund percentages were, in effect, dedicated to the payment of these salaries prior to rendition of the services being compensated, by collective bargaining negotiations and agreements. In other words, the amounts ascertainable from the formulated percentages represented salary increases agreed to at the beginning of the 1992-1993 school year for services to be rendered during that year, even though they would be payable only insofar as sufficient funds would be available at the end of the year and only out of such funds at that time. The author concluded that the unique salary formulas described did not violate the rule against paying additional compensation for past services already rendered. Rather, they constituted salary increases formulated prior to the rendition of the then-future services to be rendered in return therefor, with a dedication of the use of otherwise undedicated general fund amounts remaining at the end of the year to fulfill the mathematical formulas and to finance the actual payments.
Opinion No. 94-241 addressed the State Civil Service Commission's consideration of a pay plan for state classified employees, which plan would provide a supplemental payment to such employees for work performed between July 1, 1994 and November 30, 1994. The payment would constitute a one-time supplemental payment amounting to five (5%) percent of the employees' annual salary determined as of November 30, 1994, with a maximum of $1,200. The payment would be prorated based upon the period of employment between July 1, 1994 and November 30, 1994. The employee would only be eligible to receive the payment if said employee was employed on the date the pay increase was distributed, which date was after November 30, 1994.
Under the factual scenario considered by the author, it was noted that affected employees had not received a general pay increase since July of 1990, that the Civil Service Commission had proposed a 5% increase to the Governor, that the legislature has specifically provided funding for the proposed pay plan and that the plan was in accordance with the constitutional authority vested in the Commission.
The opinion concluded that, under this specific factual scenario, the payments contemplated by the plan constitute "earned compensation" pursuant to a legislative plan, and not a violation of Article VII, Section 14.
We have reviewed the facts surrounding the payment in question, and conclude that it cannot be factually distinguished from the lump sum payments addressed in Attorney General Opinion No. 80-344, 89-328 and 92-295, all of which were deemed to be retroactive pay raises or bonuses for services previously rendered in violation of Article VII, Section 14.
We find support for our position from the employment contract, itself, which clearly provides for an annual salary payable semi-monthly. While the contract provides for salary adjustments, they are predicated on meritorious performance (i.e., incentive), not on past performance.
There is no factual evidence to support the position that the payment was made pursuant to a formally adopted objective incentive program. To the contrary, the Slatten Memorandum of December 14, 1994, clearly links payment to past performance.
We further find that the proposed pay plan does not appear to fall within the perimeters of any of the acceptable plans discussed above. However, it would appear that an acceptable supplemental pay plan could be fashioned taking into consideration the constitutional criteria suggested and discussed in the above plans.
Parenthetically, it should be noted that representatives of the Port have advised this office that, at the Port's April meeting, the Chairman of the Board introduced for consideration and action a resolution which will ratify and modify the previous action and provide for the increase over a twelve-month period. We express no opinion on the validity of such a plan. We turn now to your second question regarding a violation, vel non, of the Open Meetings Law.
R.S. 42:4.1 espouses the strong public policy in favor of open public meetings:
"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally."
The primary purpose of the Open Meetings Law is to insure the right of citizens to participate in deliberations of public bodies and to protect citizens from secret decisions made without any opportunity for public input. Delta Development Co., Inc.v. Plaquemines Parish Commission Council, 451 So.2d 134
(La.App. 4th Cir. 1984) Writ Denied. Article XII, Section 3 of the Louisiana Constitution of 1974 further recognizes this inherent right of participation:
 "Section 3. No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."
For purposes of the Open Meetings Law, R.S. 42:4.2(1) clearly delineates the Port as a "Public Body".
As previously noted, the lump sum payment was made pursuant to a directive contained in an internal memorandum. The memorandum stipulates that the authority for the payment culminated with the Board Chairman's "consultation with and concurrence of the members of the Board." We have been unable to find any reference to this matter ever having been considered by the Board in open meeting. The minutes of the Board, including those of December 16, 1993, are silent with regard to the payment. While the Open Meetings Law provides exceptions to its legal mandates, we find same to be inapplicable to the subject matter in question.
It is the opinion of this office that the payment, in question, constitutes a departure from that originally approved by the Board as evidenced in the Contract. As such, it should have been reconsidered and discussed in an open and public meeting. In accord is Attorney General Opinion No. 88-485. Further, this office has consistently opined that a telephone and/or straw poll which culminates in an authorization of any official action is violative of the provisions of R.S. 42:4.1, etseq. In accord are Attorney General Opinion Nos. 93-137, 92-166, 88-485, 88-238 and 81-27.
In summary, it is the opinion of this office that the one-time lump sum supplemental payment made to the President-Chief Executive Officer of the Port of New Orleans constitutes a prohibited bonus and/or donation in violation of Article VII, Section 14 of the 1974 Constitution. In addition, the procedures followed by the Board in granting the payment violated the Louisiana Open Meetings Law.
Trusting this answers your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH[3]/cla
cc: Mr. J. Michael Orlesh, Jr., Sr. Executive Counsel, Port of New Orleans
The Honorable Bill Lynch State Inspector General Office of the State Inspector General Post Office Box 94095 State Capital Annex Baton Rouge, Louisiana 70804-9095
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General