Dear Superintendent Laster:
Your opinion request on behalf of the Concordia Parish School Board ("Board") has been forwarded to me for research and reply. Your opinion request concerns whether the Board is obligated to seek recovery of overpayments it made to certain school bus drivers.
You provided this office with the following background information. Several school buses used to transport Concordia Parish students are owned by the bus drivers ("owner operators"). At the beginning of each school year, owner operators provide the Board's transportation department with the total number of compensable miles which encompass the owner operator's route. The transportation department then audits the owner operator's route(s) to determine whether the owner operator's records were accurate.
During the 2005-2006 school year, the transportation department did not complete the audits within the same timeline as in previous years. Therefore, an outside auditor was hired to conduct the audits. The audits were prepared but were not provided to the owner operators until April 2007. There were several owner operators who were overpaid operational expenses as a result of having turned in more miles than could be justified by the audit. Approximately five owner operators have been resistant in providing a repayment to the Board.
You first asked whether the Board is obligated to seek the recovery of overpayments it made to certain owner operators. It is the opinion of this office that the Board is obligated to seek the recovery of overpayments it made to certain owner operators *Page 2 
because it would be a violation of the Louisiana Constitution if no recoupment efforts are made. Article 7, Section 14 of the Louisiana Constitution of 1974 provides in pertinent part: "[e]xcept as otherwise provided by this constitution, the funds, credit, property or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation." Payments made for work not performed, when there is no legal obligation to do so, is prohibited by Article 7, Section 14 of the Louisiana Constitution. La. Atty. Gen. Op. No. 05-0448.
Your second question was whether the fact that the Board was delayed in delivering the audit reports would affect the Board's obligation to collect such overpayments. It is the opinion of this office that the Board is still obligated to collect the overpayments even though there was a delay in delivering the audit reports. Our office has determined in previous opinions that a public agency would be in violation of the Louisiana Constitution if no efforts were made to recover unauthorized payments even if an extended period of time had past. See La. Atty. Gen. Op. No. 05-0082. Thus, the Board would be obligated to seek the recovery of the overpayments even though two years had passed since the delivery of the audit reports.
You also asked: "[f]or those drivers who question the amounts shown to be owed to the school board as a result of the transportation department's audits, how should the board proceed?" Our office has previously opined that a public body must exercise every reasonable means to recover an overpayment. Reasonable means must be determined on a case-by-case basis and on sound business practices and principles. See La. Atty. Gen. Op. Nos. 05-0082 and 03-0444. Furthermore, it is our belief that the Board should strive to recover the overpayments fairly, but as quickly as possible, in order to do the least injustice to the Constitution. See La. Atty. Gen. Op. No. 01-0063.
In your fourth question to our office, you asked specifically: "[d]o the requirements of Bulletin 1191 relative to measuring bus driver routes apply to special routes that vary or to additional bus runs performed at the request of the school board?" The term "route," as defined by Bulletin 1191, means the combined total daily trips regularly assigned to the bus driver. LAC 28:XXVII.2101. Local school boards are empowered with the duty to establish bus routes. LAC 28:XXVII.501. The primary responsibility for establishing and continuing school bus routes rests with the local school board. Local school boards are responsible for maintaining safe, efficient, and economical school transportation programs. LAC 28:XXVII.2101.
As stated above, the Board's concern is whether the requirements of Bulletin 1191, relative to measuring routes, would apply to those "special routes that vary or to additional bus runs performed at the request of the local school board". For this inquiry, a determination must be made on a case-by-case basis. Specific facts, relative to how often changes occur, are needed in order to make a proper determination as to whether the requirements of Bulletin 1191 must be followed. Specific facts are needed to determine whether these runs should be considered as trips regularly assigned to the driver, thus, considered to be "routes". Therefore, it is the opinion of the office that the *Page 3 
Board should make a factual determination as to whether the requirements of Bulletin 1191 are applicable.
For the reasons explained above, it is the opinion of this office that the Board would be obligated to seek recovery of overpayments it made to owner operators.
We hope this sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
With Best Regards,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By:______________________ Cherie A. Lato Assistant Attorney General
 CCF, JR:CAL
 OPINION NUMBER 05-0082 Mr. Tony C. Tillman. Attorney General of Louisiana — Opinion. April 20, 2005. *Page 1 
90-A-2 PUBLIC FUNDS — Loan, Pledge or Grants
La.Const. Art. VII, Sec. 14 Public agencies must attempt to recover overpayments made under a contract.
Mr. Tony C. Tillman
P.O. Drawer 648
Leesville, Louisiana 71496-0648
CHARLES C. FOTI, JR., Attorney General
Dear Mr. Tillman:
You requested an Attorney General's opinion regarding the obligations of the Board of Commissioners of the Ebarb Waterworks District No. 1 of Sabine Parish ("Ebarb") in dealing with an overpayment. You indicated that a contract exists between Ebarb and South Toledo Bend Waterworks District ("South Toledo") whereby South Toledo sells water at a wholesale rate to Ebarb. The water that is used is withdrawn by South Toledo from the Toledo Bend Reservoir, and payments are made to the Sabine River Authority for the water. Once the water is treated and transported to Ebarb, Ebarb sells the treated water back to the Sabine River Authority. Both Ebarb and South Toledo were funded by loans from the Rural Utility Service of the U.S. Department of Agriculture. Therefore, the contract in question requires the consent and concurrence of Ebarb, South Toledo, Sabine River Authority and the Rural Utility Service.
The contract was put into place a number of years ago, and within a matter of months, unbeknownst to the other parties, South Toledo increased the rate it charged under the contract. Neither Ebarb, the Sabine River Authority nor the Rural Utility Service was aware of, approved or agreed to such an increase. The increased rate was charged for a number of years before it was discovered. As a result, Ebarb has been overcharged and has overpaid approximately $152,000 under the contract. Your question is whether Ebarb is obligated to either obtain a refund, credit or some other compensation for the overpayment, or may Ebarb merely ignore the overpayments and "walk away" from such monies.
It is the opinion of this office that a public agency would be in violation of the Louisiana Constitution if no recoupment efforts are made. Article VII, Section 14 of the Louisiana Constitution of 1974 provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ." *Page 2 
Article 7, Section 14 of the Louisiana Constitution clearly prohibits the donation of public funds. Thus the state or any of its political subdivisions may not loan, pledge or donate its funds or anything of value to or for any person when it is under no obligation to do so. SeeCity of Port Allen v. Louisiana Municipal Risk Agency, 439 So.2d 399
(La. 1983); Beaird-Poulan, Inc. v. Department of Highways,362 F.Supp. 547 (W.D.La. 1973). We have interpreted legal obligation to mean that the expenditure of funds be sanctioned, authorized by law, or in the discharge of a legal duty. Attorney General Opinion Nos. 02-0162 and 00-0014.
An overpayment, above what is required under the contract at issue, is prohibited by Article VII, Section 14 of the Louisiana Constitution. It stands to reason, therefore, that the Board of Commissioners of the Ebarb Waterworks District No. 1 of Sabine Parish must exercise every reasonable means to recover the overpayment. Reasonable means must be determined on a case-by-case basis and on sound business practices and principles. In accord is Attorney General Opinion No. 03-0444.
Trusting this adequately responds to your request, we remain
 Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY:_________________________ KENNETH L. ROCHE, III Assistant Attorney General
 OPINION NUMBER 03-0444 Mr. Jerry Luke LeBlanc. Attorney General of Louisiana — Opinion. February 4, 2004. *Page 1 
90-A-2 Public Funds — Loan, Pledge or Grants Article 7, Section 14 of the Louisiana Constitution
Public agencies must attempt to recover overpayments made to its employees.
CHARLES C. FOTI, JR., Attorney General
Dear Mr. LeBlanc:
The Division of Administration is responsible for the bi-weekly payment of approximately 50,000 state employees. There are times when an employee is overpaid in error. If the employee is employed by the state at the time of the overpayment, the state is able to recoup the payment from the following pay period. The recoupment of overpayments is more difficult in those instances when the employee is no longer employed by the state. Although many employees, upon receiving notification from the state of the overpayment reimburse the state; many do not. The Division of Administration questions if a state agency would be in violation of Louisiana Law if no recoupment efforts are made for minor overpayments.
In short, we believe that a public agency would be in violation of the Louisiana Constitution if no recoupment efforts are made. Article 7, Section 14 of the Louisiana Constitution clearly prohibits the donation of public funds. Thus the state or any of its political subdivisions may not loan, pledge or donate its funds or anything of value to or for any person when it is under no obligation to do so.[1] We have interpreted legal obligation to mean that the expenditure of funds be sanctioned, authorized by law, or in the discharge of a legal duty.[2] Public employees may only be compensated for their labor. They are also entitled to all earned benefits. Bonuses or any other type of gratuitous, unearned payments are prohibited.
Clearly, an overpayment, a payment for something that the employee did not earn, is a bonus and is prohibited by Article 7, Section 14 of the Louisiana Constitution. It stands to reason, therefore, that the agency must exercise every reasonable means to recover the overpayment. Reasonable means must be determined by the agency on a case-by-case basis and on sound business practices and principles. *Page 2 
We trust that this adequately responds to your request. If you have any questions or comments, please do not hesitate to contact our office.
 Yours very truly,
 CHARLES C. FOTI, JR. Attorney General
 BY:_________________ TINA VICARI GRANT
[1] City of Port Allen v. Louisiana Municipal Risk Agency, 439 So.2d 399
(La. 1983).
[2] Attorney General Opinion Nos. 02-0162 and 00-14.
 OPINION NUMBER 01-63 Mr. Joseph P. Hue. Attorney General of Louisiana — Opinion. May 11, 2001. *Page 1 
90-A-2 PUBLIC FUNDS — Loan, Pledge or Grants
St. Martin Parish Council on Aging's payment of wages to an employee beyond her accrued leave time was a violation of La.Const. Art. VII, Sec. 14. The Council On Aging cannot retroactively increase the rate at which its employee(s) earn leave time.
Mr. Joseph P. Hue
Program Auditor
Governor's Office of Elderly Affairs
P.O. Box 80374
Baton Rouge, Louisiana 70898-3074
RICHARD P. IEYOUB, Attorney General
Dear Mr. Hue:
This office is in receipt of your request for an Attorney General's opinion on the issue of whether or not a Parish Council on Aging can retroactively increase the rate at which an employee earns leave time.
According to your correspondence, the Director of the St. Martin Parish Council On Aging had a long-term illness and was away from her job beyond her accrued leave time in FY 2000. The Board of Directors approved payment of her salary beyond her earned leave time. The amount paid above her earned leave time was $7,312.00. Subsequently, the independent audit of the St. Martin Council On Aging found this action to be in violation of La.Const. Art. VII, Sec. 14. Based upon that finding, the Governor's Office of Elderly Affairs instructed the St. Martin Parish Council On Aging to have the Director reimburse the amount she had been paid in a lump sum to the Council On Aging. Instead, the Board of Directors of the St. Martin Parish Council On Aging decided to allow the Director to apply leave time earned in the future until she had paid back all the unearned leave taken in FY 2000. The Governor's Office Of Elderly Affairs informed the Council On Aging that it believed this action also violated La.Const. Art. VII, Sec. 14.
The St. Martin Parish Council On Aging is now considering increasing the rate at which employees with twenty or more years of service earn leave time. The Board of Directors of the Council On Aging is planning to make this action retroactive for an unspecified number of years. Your office would like our opinion with respect to the action being considered by the St. Martin Parish Council On Aging, in order to better inform and advise the Board of Directors.
As you are aware, your request must be addressed in light of La.Const. Art. VII, Sec. 14, which pertinently provides: *Page 2 
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
This constitutional provision was examined by the Supreme Court in Cityof Port Allen v. Louisiana Municipal Risk Agency, Inc., 439 So.2d 399
(La. 1983). In City of Port Allen, the Court stated that Art. VII, Sec. 14(A), which prohibits the state and its political subdivisions from donating assets, "is violated whenever the state or a political subdivision seeks to give up something of value when it is under no obligation to do so."
This office has written a number of opinions pertaining to employee compensation and has consistently opined that payments of gratuitous unearned payments to public employees are prohibited, as same are tantamount to donations. See: Attorney General's Opinions. Nos. 95-95, 92-295, 92-282, 89-190, 88-344, 86-639, 83-940A, 81-1329 and 80-806. Copies of these opinions are included herewith for your reference. Of particular pertinence to your request is Attorney General's Opinion No. 95-95. Therein, in accordance with La.Const. Art. VII, Sec 14, this office determined that the payment of wages to a school board employee whose worker's compensation and whose annual leave and sick leave had been exhausted was in violation of the Louisiana Constitution. Additionally, we note that various attempts to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the listed opinions were found to be constitutionally infirm.
We find support for the cited opinions in State v. Davis, 539 So. 2d 803
(La.App. 3rd Cir. 1989), Writ Denied. Therein, in determining whether particular payments made to a public officer were in violation of the Constitution, the Court stated:
 "We are presented with a factual determination: were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered but for which no salary was drawn when the services were rendered?"
Essentially, in accordance with the above cited opinions and the Davis
case, the test for determining the constitutionality of a particular payment to a public officer or employee is whether the payment is made out of a motive of beneficence solely to enrich the officer or employee, or whether the payment is deserved and made as recompense for valuable service rendered, for which the officer or employee was not adequately paid. Atty. Gen. Op. No. 95-323.
It is the opinion of this office that the St. Martin Parish Council On Aging cannot retroactively increase the rate at which its employee(s) earn leave time. Based upon the facts as you have described them, it appears that the Council On Aging's motivation in doing so is to assist its Director (and perhaps other employees in the process), out of *Page 3 
a motive of beneficence, no doubt to assist the Director in overcoming setbacks caused by the illness that kept her from her job. As such, although it is clear that the Board of Directors of the Council on Aging considers its Director to be an asset and a person deserving of assistance, allowing the accrual of retroactive increased leave time and payment thereof would violate La.Const. Art. VII, Sec. 14. Davis, supra.
Please note that we agree with your advice to the St. Martin Parish Council On Aging that the payment of wages to an employee beyond their accrued leave time is a violation of La.Const. Art. VII, Sec. 14. Additionally, we agree that the best way to resolve the matter at hand would be for the Director to reimburse her employer in a lump sum. We recognize, however, that payment of that large a sum of money at one time would be difficult, if not impossible, for many individuals. As such, we believe the Council On Aging and its Director have no choice but to work out a payment plan. Although a payment plan, in our opinion constitutes a loan, which is also in violation of La.Const. Art. VII, Sec. 14, it is likely the only way to insure that the funds that were improperly paid to the Director are recovered. It would be our advice that the Board of Directors of the Council On Aging strives to recover those funds fairly, but as quickly as possible, in order to do the least injustice to the Constitution.
We trust the foregoing to be of assistance. Please do not hesitate to contact us if we can be of assistance to you or to any of this state's Councils On Aging in the future.
 Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY:___________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney-General