Dear Mr. Anzelmo:
You have requested an opinion of the Attorney General, in your capacity as Special Counsel to the Board of the Directors (Board) of the East Jefferson General Hospital (Hospital), relating to the development of strategic plans and market strategies as they relate to the Hospital. You present the following two questions for our consideration:
 (1) Has the Board satisfied the requirements of state law applicable to the proceedings by which the Board of the Hospital has conducted its business under R.S. 46:1073 and R.S. 42:6 et seq., with respect to the discussion, development, approval and implementation of its strategic plan for the retention, development, management, motivation, evaluation, and supervision of its President and CEO, including a carefully designed executive compensation package?
 (2) Do the substantive provisions of the executive compensation package which has been granted to the President and CEO of the Hospital, comply fully with Article VII, Section 14(A) of the Louisiana Constitution of 1974?
As you state in your request and your well-written and cogent memorandum, your first question is controlled by R.S. 42:4.1 et seq., and R.S. 46:1071 et seq. Our Legislature has clearly provided that public policy favors open meetings, and the laws related thereto must be liberally construed. R.S. 42:4.1(A) provides:
 A. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through 10 shall be construed liberally.
R.S. 42:4.2 defines "Public body" to include" any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated." This broad definition includes the Board. Attorney General Opinion Nos. 96-371, 96-357, 95-346, 95-193 and 93-62.
R.S. 42:6 authorizes a public body to hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. The executive session must be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during the executive session.
R.S. 42:6.1 enumerates the reasons for which executive sessions may be held. Those relevant to the issue at hand include:
 Discussion of the character, professional confidence or physical or mental health of a person.
 Strategy sessions or negotiations with respect to collective bargaining.
 Any other matters now, or as maybe, provided for by the Legislature.
We opine that one of the "other matters" provided for by the Legislature for which executive session is appropriate is found at R.S.46:1071 et seq., which comprise the laws relative to the "Enhanced Ability to Compete", within the Hospital Service District Act. The legislative findings and purpose for this legislation is found at R.S.46:1071:
 The legislature hereby finds that the market for hospital and health care services is becoming increasing competitive. The legislature finds that hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
Section 1072 designates the following definitions which we believe are relevant to the issues at hand:
 As used in this Subpart, the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
 (1) "Hospital health services" means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incidental thereto.
 * * *
 (3) "Market strategies" means any plan, strategy, or device developed or intended to promote, sell, or offer to sell any hospital health service.
 (4) "Strategic plan" means any plan, strategy, or device developed or intended to construct, operate, maintain a health facility or engage in providing, promoting, or selling a hospital health service.
Section 1073 provides the following with respect to the development of market strategies and strategic planning:
 A. In addition to powers and duties otherwise provided and not-withstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena. (Emphasis added.)
As can be gleaned from the above, the Legislature has unequivocally recognized that, while the Hospital is a "public body" for purposes of the Open Meetings Law, its marketing strategies and strategic plans are proprietary and confidential. As it is the Board that has the authority to develop these plans and strategies, it logically follows that the determination of what constitutes confidential materials vests within the sound and reasonable discretion thereof. Attorney General Opinion No. 96-371.
At issue in your request is a Variable Incentive Compensation Plan (Compensation Plan) for the Hospital's President and CEO. The Compensation Plan constitutes a component of the Hospital's strategic plan. You state that there appears to be some confusion concerning exactly which procedures were followed by the Board in its recent proceedings conducted pursuant to R.S. 46:1073 and 42:6 to discuss, develop and approve its strategic plan for retaining, developing and supervising the skills, learning knowledge, experience and ability of its top administrator of nineteen years. Some board members recall a vote to approve the executive compensation package in open session, while others believe the vote occurred while the Board was in executive session.
You specifically ask whether the Compensation Plan could be approved by vote of the Board in open session and/or in executive session. Obviously, under the Open Meetings Law, the Compensation Plan can be approved by a vote of the Board in open session. One could even argue that R.S. 42:6 requires that such a vote be taken in open session. It provides, in pertinent part, the following:
 A. A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session . . . (Emphasis added.)
In Attorney General Opinion Nos. 95-193 and 95-193(A) we addressed the issue of whether a Hospital Service District could act in executive session in a final and binding manner until its strategic plan was fully developed and brought to a logical conclusion. Therein, we concluded that, while the Open Meetings Law provides that no final or binding action shall be taken during an executive session, R.S. 46:1073(B) provides that a hospital service district commission can hold an executive session for the discussion and development of marketing strategies and strategic plans, notwithstanding the provisions of R.S. 42:4.1 et seq. Accordingly, we opined that a hospital service district could continue to act within the confines of an executive session until such time as the development of those proposed marketing strategies and strategic plans were brought to a final resolution, in this case, by the acquisition of properties upon which to expand the hospital facility.
In support thereof, we cited the case of Calcasieu — CameronHospital Service District v. Fontenot, 628 So.2d 75 (La.App. 3rd Cir. 1993) writ denied. Therein, the Court held:
 The defendants have also raised the issue of whether the Hospital District violated the opened meetings laws, LSA-R.S. 42:4.1-13, in making the decision to expropriate the Fontenot's property in a closed meeting. LSA-R.S. 46:1073(B) specifically authorizes a hospital service district commission to hold an executive, or closed, session for the discussion and development of strategic plans, which includes any plan, strategy, or device developed or intended to construct, operate or maintain a health facility (LSA-R.S. 46:1072 (4)). Therefore, this issue has no merit. (Emphasis added.)
While the language quoted above constituted the first footnote of the decision, it is the sole jurisprudential interpretation of R.S. 46:1073(B). As stated therein, the court found no merit to the argument that the hospital service district violated the Open Meetings Law by making the decision to expropriate certain property in executive session. In accord is Attorney General Opinion No. 95-346.
Accordingly, and in answer to your first question, it is the opinion of this office that the Board satisfied the requirements of state law applicable to the proceedings by which it procedurally conducted its business under R.S. 46:1073 and 42:6. Further, we find that the vote to approve the Compensation Plan could occur in either open or executive session. We turn now to your second question.
The resolution of your second question is controlled by the provisions of Article VII, Section 14(A). It provides, in pertinent part, the following:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
This office has consistently opined that the payment of a bonus or any other gratuitous unearned payment to public officials or employees is prohibited, as same would be tantamount to a donation. See Attorney General Opinion Nos. 97-190, 95-145, 92-295, 92-282, 89-190, 88-344, 86-639 and 80-806.
Essentially, all of these authorities cite the well-established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the opinions cited above were found to be equally invalid.
Conversely, this office does not consider Article VII, Section 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position in State v. Davis, 539 So.2d 803 (La.App. 3rd Cir. 1989) writ denied. Therein, the Court held:
 We are presented with a factual determination: were the two payments which defendant paid to himself extra compensation for past services rendered or salaries for services but for which no salary was drawn when the services were rendered? (Emphasis added.)
In your request, you state that the Compensation Plan for the Hospital's President and CEO was based on a study prepared by a consultant firm retained by the Board. The firm submitted an objective set of criteria upon which a legal variable incentive compensation plan could be based.
The Compensation Plan is designed (1) to induce additional performance by its CEO, in addition to his normal duties, constituting a demonstrable public benefit (e.g., increased communications between the administration, the Board and the medical staff; identification and implementation of opportunities to work with the Parish's other hospital (West Jefferson Medical Center); and the operation of a more efficient, better staffed, better equipped, patient oriented, cutting edge of technology and fiscally viable public hospital); (2) to provide for future compensation for the CEO for valuable additional services to be rendered; (3) to be formally adopted in writing by the Board prior to, or at the beginning of, the year that the Plan was to be in place; and (4) to state clear and objective criteria for the CEO to meet in order to be entitled to the incentive compensation.
In Attorney General Opinion Nos. 97-190 and 90-128, this office recognized as constitutionally permissible, incentive pay plans which promise additional but reasonable compensation for future performance by a public employee or official which is of a demonstrable public benefit. To meet constitutional muster, such an incentive program must be formally adopted and completely stated in writing.
Upon review of the Compensation Plan, as presented it your request, it is the opinion of this office that it does not constitute a donation, but rather earned compensation. As such, the Compensation Plan does not violate the provisions of Article VII, Section 14 (A) of the Louisiana Constitution of 1974. We are mindful of the case of Varnado v. HospitalService District No. 1, 730 So.2d 1066 (La.App. 1st Cir. 1999). However, we find the facts in Varnado to be inapposite to the Compensation Plan presented in your request.
In reaching our conclusion, we have relied upon your advice and representations as to the components of the plan and the manner in which they were implemented.
Trusting that we have adequately responded to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By:______________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/mab
Mr. Salvador Anzelmo, Special Counsel East Jefferson Hospital One Canal Place, Suite 2800 365 Canal Street New Orleans, Louisiana 70130
DATE RELEASED: July 10, 2001
Robert E. Harroun, III Assistant Attorney General