Dear Mr. Smith:
You have requested an opinion of the Attorney General regarding the issue of supplemental compensation for your full time employees. You ask whether such employees could receive a lump sum payment once a year, contingent upon an operating surplus in your office funds.
In answer to your question, we refer to Article VII, § 14 (A). It provides, in pertinent part, the following:
 Except as otherwise provided by this Constitution, the funds, credit, property, or things of value of the State or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association or corporation, public or private.
This office has consistently opined that the payment of a bonus or any other gratuitous unearned payment to public officials or employees is prohibited, as same would be tantamount to a donation. See Attorney General Opinion Nos. 01-242, 97-190, 95-145, 92-295, 89-190, 88-344, 86-201 and 77-226.
Essentially, all of these authorities cite the well established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the opinions cited above were found to be equally invalid.
Conversely, this office does not consider Article VII, § 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. State v. Davis, 539 So.2d 803
(La.App. 3rd Cir. 1989) writ denied.
In Attorney General Opinion 77-266 we addressed the issue of whether the employees of the Town Simmesport could be given a salary increase for one month only. Therein, we concluded:
 The grant of a salary increase for one month only would be tantamount to giving of a bonus. It is axiomatic that one may not accomplish indirectly what may not be accomplished directly.
 Therefore, it our opinion that the Town of Simmesport cannot raise the salary of its employees for one month at the end of each year because such raise would be a donation prohibited by Article VII, § 14 (A) of the 1974 Constitution. If the town wishes to reward its employees for their services, it may grant them permanent salary increases.
In Attorney General Opinion No. 86-201 we addressed the issue of whether district attorneys could issue lump sum payments during the month of December of each year from a statutorily created worthless check fund. For the same reasons espoused in Opinion No. 77-226, we concluded that said payments must be in the form of salary increases for the future, not a lump sum payment for past services rendered.
Accordingly, we find that an annual lump sum payment to your full time employees is legally impermissible. Alternatively, we recommend that your operating surplus be carried over and reflected in the ensuing year's budget as salary increases.
Trusting this adequately responds to your inquiry, I am
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/tp
DATE REQUESTED: June 25, 2001
DATE RELEASED: August 3, 2001
OPINION NUMBER 01-242
 July 10, 2001
 SYLLABUS
53 Hospitals
90-A-2 Public Funds Loan, Pledge or Grants
90-B-4 Public Meetings
90-C Public Records
Article VII, Section 14 (A) of the 1974 Louisiana Constitution; R.S. 42:4.1 et seq.; R.S. 42:6; R.S. 46:1071, 1072, 1073
The adoption of a Hospital Service District's strategic plan, including a variable incentive compensation plan for its President and CEO, could be accomplished in either open or executive session. The variable incentive compensation plan, as described by the legal counsel for the Hospital, constitutes earned compensation which is not prohibited by Article VII, Section 14 (A) of the Louisiana Constitution of 1974.
Mr. Salvador Anzelmo, Special Counsel East Jefferson Hospital One Canal Place, Suite 2800 365 Canal Street New Orleans, Louisiana 70130
Dear Mr. Anzelmo:
You have requested an opinion of the Attorney General, in your capacity as Special Counsel to the Board of the Directors (Board) of the East Jefferson General Hospital (Hospital), relating to the development of strategic plans and market strategies as they relate to the Hospital. You present the following two questions for our consideration:
 (1) Has the Board satisfied the requirements of state law applicable to the proceedings by which the Board of the Hospital has conducted its business under R.S. 46:1073 and R.S. 42:6 et seq., with respect to the discussion, development, approval and implementation of its strategic plan for the retention, development, management, motivation, evaluation, and supervision of its President and CEO, including a carefully designed executive compensation package?
 (2) Do the substantive provisions of the executive compensation package which has been granted to the President and CEO of the Hospital, comply fully with Article VII, Section 14(A) of the Louisiana Constitution of 1974?
As you state in your request and your well-written and cogent memorandum, your first question is controlled by R.S. 42:4.1 et seq., and R.S. 46:1071 et seq. Our Legislature has clearly provided that public policy favors open meetings, and the laws related thereto must be liberally construed. R.S. 42:4.1(A) provides:
 A. It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through 10 shall be construed liberally.
R.S. 42:4.2 defines "Public body" to include" any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated." This broad definition includes the Board. Attorney General Opinion Nos. 96-371, 96-357, 95-346, 95-193 and 93-62.
R.S. 42:6 authorizes a public body to hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. The executive session must be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during the executive session.
R.S. 42:6.1 enumerates the reasons for which executive sessions may be held. Those relevant to the issue at hand include:
 (1) Discussion of the character, professional confidence or physical or mental health of a person.
 (2) Strategy sessions or negotiations with respect to collective bargaining.
 (3) Any other matters now, or as maybe, provided for by the Legislature.
We opine that one of the "other matters" provided for by the Legislature for which executive session is appropriate is found at R.S.46:1071 et seq., which comprise the laws relative to the "Enhanced Ability to Compete", within the Hospital Service District Act. The legislative findings and purpose for this legislation is found at R.S.46:1071:
 The legislature hereby finds that the market for hospital and health care services is becoming increasing competitive. The legislature finds that hospital and other health care providers are contracting to engage in economic joint ventures or form partnerships to offer integrated health care services to the public. The legislature finds that this increasing competition is forcing hospitals and other health care providers to develop market strategies and strategic plans to effectively compete. The legislature further finds that hospital service districts are presently at a competitive disadvantage. The legislature hereby declares that the purpose of R.S. 46:1071 through 1076 is to enhance the ability of a hospital service district to compete effectively and equally in the market for health care services. Towards this end, the provisions of R.S. 46:1071 through 1076 shall be construed liberally.
Section 1072 designates the following definitions which we believe are relevant to the issues at hand:
 As used in this Subpart, the following words and phrases shall have the following meanings ascribed for each unless the context clearly indicates otherwise:
 (1) "Hospital health services" means but is not limited to any clinical, diagnostic, or rehabilitation service and any administrative, managerial, or operational service incidental thereto.
 * * *
 (3) "Market strategies" means any plan, strategy, or device developed or intended to promote, sell, or offer to sell any hospital health service.
 (4) "Strategic plan" means any plan, strategy, or device developed or intended to construct, operate, maintain a health facility or engage in providing, promoting, or selling a hospital health service.
Section 1073 provides the following with respect to the development of market strategies and strategic planning:
 A. In addition to powers and duties otherwise provided and not-withstanding any law to the contrary, a hospital service district may develop marketing strategies for its existing hospital health services or any hospital health service to be provided in the future and may develop strategic plans for the development of any future hospital health service or facility.
 B. Notwithstanding the provisions of R.S. 42:4.1 et seq. or any other law to the contrary, a hospital service district commission may hold an executive session for the discussion and development of marketing strategies and strategic plans.
 C. Notwithstanding the provisions of R.S. 44:1 et seq. or any other law to the contrary, any marketing strategy and strategic plan of a hospital service district commission and the facility owned or operated by the district shall not be public record and shall be confidential but shall be subject to court subpoena. (Emphasis added.)
As can be gleaned from the above, the Legislature has unequivocally recognized that, while the Hospital is a "public body" for purposes of the Open Meetings Law, its marketing strategies and strategic plans are proprietary and confidential. As it is the Board that has the authority to develop these plans and strategies, it logically follows that the determination of what constitutes confidential materials vests within the sound and reasonable discretion thereof. Attorney General Opinion No. 96-371.
At issue in your request is a Variable Incentive Compensation Plan (Compensation Plan) for the Hospital's President and CEO. The Compensation Plan constitutes a component of the Hospital's strategic plan. You state that there appears to be some confusion concerning exactly which procedures were followed by the Board in its recent proceedings conducted pursuant to R.S. 46:1073 and 42:6 to discuss, develop and approve its strategic plan for retaining, developing and supervising the skills, learning knowledge, experience and ability of its top administrator of nineteen years. Some board members recall a vote to approve the executive compensation package in open session, while others believe the vote occurred while the Board was in executive session.
You specifically ask whether the Compensation Plan could be approved by vote of the Board in open session and/or in executive session. Obviously, under the Open Meetings Law, the Compensation Plan can be approved by a vote of the Board in open session. One could even argue that R.S. 42:6 requires that such a vote be taken in open session. It provides, in pertinent part, the following:
 A. A public body may hold executive sessions upon an affirmative vote, taken at an open meeting for which notice has been given pursuant to R.S. 42:7, of two-thirds of its constituent members present. An executive session shall be limited to matters allowed to be exempted from discussion at open meetings by R.S. 42:6.1; however, no final or binding action shall be taken during an executive session . . . (Emphasis added.)
In Attorney General Opinion Nos. 95-193 and 95-193(A) we addressed the issue of whether a Hospital Service District could act in executive session in a final and binding manner until its strategic plan was fully developed and brought to a logical conclusion. Therein, we concluded that, while the Open Meetings Law provides that no final or binding action shall be taken during an executive session, R.S. 46:1073(B) provides that a hospital service district commission can hold an executive session for the discussion and development of marketing strategies and strategic plans, notwithstanding the provisions of R.S. 42:4.1 et seq. Accordingly, we opined that a hospital service district could continue to act within the confines of an executive session until such time as the development of those proposed marketing strategies and strategic plans were brought to a final resolution, in this case, by the acquisition of properties upon which to expand the hospital facility.
In support thereof, we cited the case of Calcasieu — CameronHospital Service District v. Fontenot, 628 So.2d 75 (La.App. 3rd Cir. 1993) writ denied. Therein, the Court held:
 The defendants have also raised the issue of whether the Hospital District violated the opened meetings laws, LSA-R.S. 42:4.1-13, in making the decision to expropriate the Fontenot's property in a closed meeting. LSA-R.S. 46:1073(B) specifically authorizes a hospital service district commission to hold an executive, or closed, session for the discussion and development of strategic plans, which includes any plan, strategy, or device developed or intended to construct, operate or maintain a health facility (LSA-R.S. 46:1072 (4)). Therefore, this issue has no merit. (Emphasis added.)
While the language quoted above constituted the first footnote of the decision, it is the sole jurisprudential interpretation of R.S. 46:1073(B). As stated therein, the court found no merit to the argument that the hospital service district violated the Open Meetings Law by making the decision to expropriate certain property in executive session. In accord is Attorney General Opinion No. 95-346.
Accordingly, and in answer to your first question, it is the opinion of this office that the Board satisfied the requirements of state law applicable to the proceedings by which it procedurally conducted its business under R.S. 46:1073 and 42:6. Further, we find that the vote to approve the Compensation Plan could occur in either open or executive session. We turn now to your second question.
The resolution of your second question is controlled by the provisions of Article VII, Section 14(A). It provides, in pertinent part, the following:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
This office has consistently opined that the payment of a bonus or any other gratuitous unearned payment to public officials or employees is prohibited, as same would be tantamount to a donation. See Attorney General Opinion Nos. 97-190, 95-145, 92-295, 92-282, 89-190, 88-344, 86-639 and 80-806.
Essentially, all of these authorities cite the well-established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the opinions cited above were found to be equally invalid.
Conversely, this office does not consider Article VII, Section 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position in State v. Davis, 539 So.2d 803 (La.App. 3rd Cir. 1989) writ denied. Therein, the Court held:
 We are presented with a factual determination: were the two payments which defendant paid to himself extra compensation for past services rendered or salaries for services but for which no salary was drawn when the services were rendered? (Emphasis added.)
In your request, you state that the Compensation Plan for the Hospital's President and CEO was based on a study prepared by a consultant firm retained by the Board. The firm submitted an objective set of criteria upon which a legal variable incentive compensation plan could be based.
The Compensation Plan is designed (1) to induce additional performance by its CEO, in addition to his normal duties, constituting a demonstrable public benefit (e.g., increased communications between the administration, the Board and the medical staff; identification and implementation of opportunities to work with the Parish's other hospital (West Jefferson Medical Center); and the operation of a more efficient, better staffed, better equipped, patient oriented, cutting edge of technology and fiscally viable public hospital); (2) to provide for future compensation for the CEO for valuable additional services to be rendered; (3) to be formally adopted in writing by the Board prior to, or at the beginning of, the year that the Plan was to be in place; and (4) to state clear and objective criteria for the CEO to meet in order to be entitled to the incentive compensation.
In Attorney General Opinion Nos. 97-190 and 90-128, this office recognized as constitutionally permissible, incentive pay plans which promise additional but reasonable compensation for future performance by a public employee or official which is of a demonstrable public benefit. To meet constitutional muster, such an incentive program must be formally adopted and completely stated in writing.
Upon review of the Compensation Plan, as presented it your request, it is the opinion of this office that it does not constitute a donation, but rather earned compensation. As such, the Compensation Plan does not violate the provisions of Article VII, Section 14 (A) of the Louisiana Constitution of 1974. We are mindful of the case of Varnado v. HospitalService District No. 1, 730 So.2d 1066 (La.App. 1st Cir. 1999). However, we find the facts in Varnado to be inapposite to the Compensation Plan presented in your request.
In reaching our conclusion, we have relied upon your advice and representations as to the components of the plan and the manner in which they were implemented.
Trusting that we have adequately responded to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By:______________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/mab
OPINION NUMBER 97-190
JULY 28, 1997
53 HOSPITALS 90-A-2 PUBLIC FUNDS — Loan, Pledge or Grants
Payments made in accordance with Hospital Service District's "incentive salary adjustment policy" appear to be earned compensation, and therefore not in violation of La. Const. Art.VII, Sec. 14.
Mr. Nicholas F. LaRocca, Jr. P.O. Box 2466 Morgan City, Louisiana 70381-2466
Dear Mr. LaRocca:
On behalf of Hospital Service District Number 2 of the Parish of St. Mary, you have requested the opinion of this office regarding an "incentive salary adjustment policy" adopted by the District's Board of Commissioners in an effort to motivate and compensate its Chief Executive Officer. According to your letter, the Board of Commissioners annually reviews the Chief Executive Officer's performance during the previous year, pursuant to detailed written objective performance criteria, in order to determine the extent to which the CEO exceeded the goals and expectations of management and performed beyond the scope of ordinary duties. A copy of a sample performance evaluation is attached hereto. You have advised the undersigned that the items included in the evaluation are weighted and scored. Assuming the CEO has ". . . exceeded the goals and expectations of management and performed beyond the scope of ordinary duties . . .", she is paid a lump sum amount for the preceding year. Your letter states that the payment is made pursuant to an advance agreement with the CEO and is meant to be an incentive for the CEO, as opposed to a spontaneous, retroactive payment for previous service. You have also advised that the CEO has no expectation of receiving the payment if she does not exceed the Board's goals and perform beyond the scope of her duties.
Specifically, you are interested in determining whether the "incentive salary adjustment policy" is in accord with La. Const. Art. VII, Sec. 14, in light of Atty. Gen. Op. No. 90-128. Therein, this office opined:
 "[T]he Attorney General has recognized as constitutionally permissable incentive pay plans which promise additional but reasonable future
compensation for future performance by a public employee which is of a demonstrable public benefit . . . To meet constitutional muster, an incentive program such as you suggest must be formal, i.e., it must be adopted formally by the school board and must be completely stated in writing."
Art. VII, Sec. 14 provides, in pertinent part:
 "Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
This office has written a number of opinions pertaining to employee compensation in addition to Atty. Gen. Op. No. 90-128, and has consistently opined that the payment of gratuitous unearned payments to public employees are prohibited, as same are tantamount to donations. See: Atty. Gen. Ops. Nos. 92-295, 92-282, 89-190, 88-344, 86-639, 83-940A, 81-1329 and 80-806. We note that various attempts to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the listed opinions were found to be constitutionally infirm.
However, this office does not consider Art. VII, Sec. 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In accord: Atty. Gen. Ops. No. 95-323, 95-165-A, 94-241. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position in State v.Davis, 539 So.2d 803 (La.App. 3rd Cir. 1989), Writ Denied. Therein, the Court held:
 "We are presented with a factual determination: were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered but for which no salary was drawn when the services were rendered?"
Essentially, in accordance with the above cited opinions and the Davis case, the test for determining the constitutionality of a particular payment to a public employee is whether the payment is made out of a motive of beneficence solely to enrich the employee or whether the payment is deserved and made as recompense for valuable service rendered, for which the employee was not adequately paid. Atty. Gen. Op. No. 95-323.
Upon review of the facts as you have presented them, it is the opinion of this office that the "incentive salary adjustment policy" which you have described cannot be construed as an attempt by the Hospital Service District to make a "donation" to its CEO.
Rather, payments made in accordance with the "incentive salary adjustment policy" appear, based upon your description, to be earned compensation. As such, the payments do not violate the provisions of La. Const. Art. VII, Sec. 14.
Please note that although you have provided us with a copy of the Board's resolution, dated July 23, 1996, pertaining to the salary adjustment policy, we have not relied upon the resolution as a complete or accurate description of how the "incentive salary adjustment policy" is implemented. Instead, we have relied upon your advice as to how the policy is implemented, as well as your advice that with your assistance the Board has, or will, amend the resolution to accurately reflect the manner in which the incentive salary adjustment policy works.
We trust the foregoing to be of assistance. With kindest regards, we are,
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:jv Attachment
OPINION NUMBER 95-145
JUNE 23, 1995
90-1 Port Commissions 90-A-2 Public Funds — Loans, Pledge or Grants 90-B-4 Public Meetings Article VII, Section 14 of the 1974 Louisiana Constitution Article XII, Section 3 of the 1974 Louisiana Constitution R.S. 42:4.2(1)
One-time lump sum salary supplement to President-Chief Executive Officer of the Port of New Orleans constitutes a bonus and/or donation of public funds in violation of Article VII, Section 14. In addition, the procedures followed in granting the salary supplement constitutes a violation of the Louisiana Open Meetings Law.
The Honorable Bill Lynch State Inspector General Office of the State Inspector General Post Office Box 94095 State Capital Annex Baton Rouge, Louisiana 70804-9095
Dear Inspector General Lynch:
You have requested an opinion of the Attorney General regarding a one-time salary payment made by the Port of New Orleans ("Port") to its Executive Director, J. Ron Brinson. You ask whether the factual circumstances under which the one-time payment was made constitutes the payment of a bonus in violation of Article VII, Section 14 of the Louisiana Constitution of 1974. In addition, you ask whether the procedures by which payment was authorized by the Board of Commissioners of the Port of New Orleans ("Board") constitutes a violation of the Louisiana Open Meetings Law.
The factual scenario presented by your office and upon which this opinion is premised, indicates that on December 16, 1994, a written memorandum was directed from Port Chairman William A. Slatten to Russell W. Honsinger, Director of Finance and Accounting, which stated:
 "After consultation with and concurrence of the members of the Board, you are authorized and directed to make a one time payment to J. Ron Brinson of 10% of his gross compensation in accordance with the terms of his personal services contract and for past performance of his duties. Such one time payment shall be made at the time of the first pay period in January, 1995." (Emphasis added.)
The employment contract between Mr. Brinson and the Port's Chairman was entered into pursuant to the authority granted to the Chairman by the Board as evidenced by an excerpt of the minutes of the Board's meeting of December 16, 1993. A review of the minutes reflect that the contract was authorized for a term ending on December 31, 1996. It provided for a 5% increase in annual salary. The minutes further reflect that there will be no changes in salary structure and overall benefit package. Further, the minutes call for the Board's By-Laws to be amended to require that the contract be reviewed every eighteen months in consultation with members of the Executive Committee.
We have reviewed the provisions of the "EMPLOYMENT CONTRACTFOR POSITION OF PRESIDENT-CHIEF EXECUTIVE OFFICER OF THE PORT OFNEW ORLEANS BETWEEN THE BOARD OF COMMISSIONERS OF THE PORT OF NEWORLEANS AND J. RON BRINSON" ("Contract"). It provides for an annual base salary which may be adjusted for meritorious performance and market conditions. It further provides for additional compensation up to 35% of his annual base salary to be applied to long-term benefits to be calculated prospectively beginning on December 15th of each year for the following twelve months.
The issue of whether the one-time payment constitutes a bonus is controlled by Article VII, Section 14 of the Louisiana Constitution of 1974 which provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
This office has consistently opined that the payment of a bonus, or any other gratuitous unearned payment to public employees is prohibited, as same would be tantamount to a donation. In accord are Attorney General Opinion Nos. 92-295, 92-282, 89-190, 88-344, 86-639, 83-940A, 81-1329 and 80-806.
Essentially, all of these authorities cite the well-established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered and recompensed in the opinions cited above were found to be equally invalid.
Conversely, this office does not consider Article VII, Section 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position inState v. Davis, 539 So.2d 803 (La.App. 3rd. Cir. 1989), Writ Denied. Therein, the Court held:
 "We are presented with a factual determination: were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered but for which no salary was drawn when the services were rendered?" (Emphasis added.)
We turn now to a review of previous opinions issued by this office which distinguish between valid and invalid factual supplemental pay scenarios.
Opinion No. 80-1095 discussed the legal authority for the City of Monroe to increase the salary of its City Judge. The City had awarded cost of living increases to all City employees for the previous six years, excluding the judge, under the mistaken belief that the judge's salary was fixed by law and could not be increased. The opinion held that the City could have included the judge in its annual cost of living increases to employees, but failed to do so. The City could correct his exclusion in anyfuture salary increases. Thus, the judge had already been compensated for past services rendered and was not entitled to a retroactive increase for these services. Any salary adjustment would have prospective application only.
Opinion No. 80-806 addressed the issue of whether a municipality could grant retroactive salary adjustments for its public officials. The adjustment was to be a reimbursement for departmental directors who received a less than average salary adjustment between November 1, 1979 and June 2, 1980. Thus, the reimbursement would, in effect, be a lump sum payment for services previously compensated. The author concluded that payments, to be legal, must be in the form of salary increases for the future, not extra compensation for past services rendered.
Opinion No. 86-639 dealt with retroactive salary increases to employees of a parish library. The payments would represent salary increases from the time the Library Board of Control contingently adopted a salary proposal to the time the money actually became available from reserve legal fees. Therein, the author concluded that such payments would constitute renumeration for services already rendered and compensated — a violation of Article VII, Section 14. Thus, the payments could not be paid retroactively, notwithstanding the fact that the Library Board had previously approved the increases since said approval was contingent upon obtaining the funds.
Opinion No. 88-344 relates to salary adjustments for three City employees who had worked thirty hours per week prior to 1987. A new administration increased their schedule to thirty-five hours per week without granting an increase in salary for the additional hours. Subsequent to the Mayor's resignation, his successor reduced the employees' work week back to thirty hours. Again, there was no change in their compensation. The issue was whether the new Mayor could authorize payment of additional compensation for the extra five hours per week worked by the employees. The opinion held that:
 ". . . absent any agreement with the employees, no overtime or extra compensation must be paid if the number of work hours per week do not exceed forty hours."
Since the employees had already received compensation for the hours they worked in 1987, they could not receive any additional compensation without the City being in violation of Article VII, Section 14.
Opinion No. 89-112 discussed the authority of a Sheriff providing modest additional compensation for firearms proficiency, vehicle safety, education and physical fitness. The author concluded that the additional compensation was part of an incentive plan justified by a rational relation to a public purpose and benefit, and by the proportionality of the incentive pay awarded to the public benefits realized as a result of said program. The author notes:
 "The achievements resulting in the payment of incentive pay are beyond the scope of ordinary duties. The higher standards of firearm proficiency and safety, vehicle safety, college academic work relating to law enforcement, and greater physical fitness, promote the protection of the lives of the deputies and the public they serve, potentiate the investigative and enforcement skills of the deputies, and save the taxpayer money in decreased incidence of vehicle accidents and lower costs due to the improved health and job performance of the deputies. Most importantly, the incentive program tends to project these higher standards of professionalism into the future as the regular and expected performance, as more and more deputies participate to enjoy the incentive benefits. The modest amount of public funds used to induce this higher professionalism is proportionate and constitutionally sanctioned."
Opinion No. 89-328 analyzed two bonuses given to the administrator of a city-owned hospital. The author distinguishes between bonuses which are simply unconstitutional spontaneous payments for past performance from additional compensation which is contractually stipulated based upon objective criteria for future performance of public benefit beyond that required by normal duties.
Opinion No. 90-128 recognized a school board's authority to institute incentive pay plans which promised additional, but reasonable future compensation, for future
performance by a public employee which is of a demonstrable public benefit. To meet constitutional muster, the program must be formal; i.e., it must be adopted formally by the school board in writing. The grounds for additional incentive pay must be objective criteria clearly stated. Finally, the program must have prospective effect only, with regard to future performance by employees. Thus, if the amount of the incentive award or pay is reasonable in relation to the nature of the employee performance and the public benefit realized, then it will qualify as compensation rather than simply spontaneous payments for past performance. In accord is Opinion No. 92-175.
Opinion No. 92-295 deals with an incentive pay plan for hospital employees, providing for a bonus of a fixed percentage of their salary based upon the hospital's overall financial performance at a pre-determined level. In striking down the plan, the author held:
"In response to a similar opinion request, Opinion No. 89-112 opined that an incentive pay plan could pass constitutional muster if the incentive pay was awarded for employee achievements beyond the scope of ordinary duties. However, Opinion No. 328 opined, `If the bonuses are simply spontaneous payments for past performance, they are unconstitutional donations of public funds.'
The information you have provided to us on the incentive pay plan proposed for Abbeville General does not appear to meet constitutional criteria, since it is the Hospital's overall financial performance rather than the individual employee's extraordinary effort which is the determinant of extra pay."
Opinion No. 93-586 addressed a unique factual situation wherein salaries for professional and non-professional employees of the St. Tammany Parish School Board were set by mathematical formula prospectively in advance of the services performed by these personnel during the 1992-1993 school year. The formula set a "base" salary for each employee and also a certain share of a percentage of whatever undedicated general fund balance remained at the end of the year. Thus, although the exact amounts of the salaries were not known at the beginning of the year, the salaries were set at that time to be mathematically ascertainable in operation on the future condition of the general fund.
The end-of-year undedicated general fund percentages were, in effect, dedicated to the payment of these salaries prior to rendition of the services being compensated, by collective bargaining negotiations and agreements. In other words, the amounts ascertainable from the formulated percentages represented salary increases agreed to at the beginning of the 1992-1993 school year for services to be rendered during that year, even though they would be payable only insofar as sufficient funds would be available at the end of the year and only out of such funds at that time. The author concluded that the unique salary formulas described did not violate the rule against paying additional compensation for past services already rendered. Rather, they constituted salary increases formulated prior to the rendition of the then-future services to be rendered in return therefor, with a dedication of the use of otherwise undedicated general fund amounts remaining at the end of the year to fulfill the mathematical formulas and to finance the actual payments.
Opinion No. 94-241 addressed the State Civil Service Commission's consideration of a pay plan for state classified employees, which plan would provide a supplemental payment to such employees for work performed between July 1, 1994 and November 30, 1994. The payment would constitute a one-time supplemental payment amounting to five (5%) percent of the employees' annual salary determined as of November 30, 1994, with a maximum of $1,200. The payment would be prorated based upon the period of employment between July 1, 1994 and November 30, 1994. The employee would only be eligible to receive the payment if said employee was employed on the date the pay increase was distributed, which date was after November 30, 1994.
Under the factual scenario considered by the author, it was noted that affected employees had not received a general pay increase since July of 1990, that the Civil Service Commission had proposed a 5% increase to the Governor, that the legislature has specifically provided funding for the proposed pay plan and that the plan was in accordance with the constitutional authority vested in the Commission.
The opinion concluded that, under this specific factual scenario, the payments contemplated by the plan constitute "earned compensation" pursuant to a legislative plan, and not a violation of Article VII, Section 14.
We have reviewed the facts surrounding the payment in question, and conclude that it cannot be factually distinguished from the lump sum payments addressed in Attorney General Opinion No. 80-344, 89-328 and 92-295, all of which were deemed to be retroactive pay raises or bonuses for services previously rendered in violation of Article VII, Section 14.
We find support for our position from the employment contract, itself, which clearly provides for an annual salary payable semi-monthly. While the contract provides for salary adjustments, they are predicated on meritorious performance (i.e., incentive), not on past performance.
There is no factual evidence to support the position that the payment was made pursuant to a formally adopted objective incentive program. To the contrary, the Slatten Memorandum of December 14, 1994, clearly links payment to past performance.
We further find that the proposed pay plan does not appear to fall within the perimeters of any of the acceptable plans discussed above. However, it would appear that an acceptable supplemental pay plan could be fashioned taking into consideration the constitutional criteria suggested and discussed in the above plans.
Parenthetically, it should be noted that representatives of the Port have advised this office that, at the Port's April meeting, the Chairman of the Board introduced for consideration and action a resolution which will ratify and modify the previous action and provide for the increase over a twelve-month period. We express no opinion on the validity of such a plan. We turn now to your second question regarding a violation, vel non, of the Open Meetings Law.
R.S. 42:4.1 espouses the strong public policy in favor of open public meetings:
"It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally."
The primary purpose of the Open Meetings Law is to insure the right of citizens to participate in deliberations of public bodies and to protect citizens from secret decisions made without any opportunity for public input. Delta Development Co., Inc.v. Plaquemines Parish Commission Council, 451 So.2d 134
(La.App. 4th Cir. 1984) Writ Denied. Article XII, Section 3 of the Louisiana Constitution of 1974 further recognizes this inherent right of participation:
 "Section 3. No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."
For purposes of the Open Meetings Law, R.S. 42:4.2(1) clearly delineates the Port as a "Public Body".
As previously noted, the lump sum payment was made pursuant to a directive contained in an internal memorandum. The memorandum stipulates that the authority for the payment culminated with the Board Chairman's "consultation with and concurrence of the members of the Board." We have been unable to find any reference to this matter ever having been considered by the Board in open meeting. The minutes of the Board, including those of December 16, 1993, are silent with regard to the payment. While the Open Meetings Law provides exceptions to its legal mandates, we find same to be inapplicable to the subject matter in question.
It is the opinion of this office that the payment, in question, constitutes a departure from that originally approved by the Board as evidenced in the Contract. As such, it should have been reconsidered and discussed in an open and public meeting. In accord is Attorney General Opinion No. 88-485. Further, this office has consistently opined that a telephone and/or straw poll which culminates in an authorization of any official action is violative of the provisions of R.S. 42:4.1, etseq. In accord are Attorney General Opinion Nos. 93-137, 92-166, 88-485, 88-238 and 81-27.
In summary, it is the opinion of this office that the one-time lump sum supplemental payment made to the President-Chief Executive Officer of the Port of New Orleans constitutes a prohibited bonus and/or donation in violation of Article VII, Section 14 of the 1974 Constitution. In addition, the procedures followed by the Board in granting the payment violated the Louisiana Open Meetings Law.
Trusting this answers your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH[3]/cla
OPINION NUMBER 92-295
RELEASED MAY 12, 1992
90-A-1 — Public Funds or Contracts CONST 7.14
Incentive pay plan may be sued to regard extraordinary individual job performance, but not as a bonus to employees for overall financial performance of hospital.
Mr. Bernard F. Duhon Bernard F. Duhon, LTD. P.O. Box 59 111 Concord St. Suite B Abbeville, LA 70511-0059
Dear Mr. Duhon:
You have requested the opinion of this office as to whether an incentive pay plan for Abbeville General Hospital employees, providing for a bonus of a fixed percentage of their salary and based upon the hospital's overall financial performance at a pre-determined level, is constitutional under Louisiana Constitution Article VII, Section 14 and La.R.S. 33:1891.
Article VII, Section 14 provides in part:
 (a) Except as provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged or donated to or for any person, association, or corporation, public, or private.
Your request also sought review of La.R.S. 33:1892, however this statute is applicable to municipalities only and therefore is not relevant to compensation paid by hospital service districts to their employees.
In response to a similar opinion request, Opinion Number 89-112 opined that an incentive pay plan could pass constitutional muster if the incentive pay was awarded for employee achievements beyond the scope of ordinary duties. However, Opinion Number 89-328 opined, "If the bonuses are simply spontaneous payments for past performance, they are unconstitutional donations of public funds."
The information you have provided to us on the incentive pay plan proposed for Abbeville General does not appear to meet constitutional criteria, since it is the Hospital's overall financial performance rather than the individual employee's extraordinary effort which is the determinant of extra pay.
Still, it does appear that an acceptable incentive pay plan can be fashioned taking into consideration the criteria suggested above.
I trust that this answers your inquiry. Please advise if we can be of further assistance.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: GLENN R. DUCOTE Assistant Attorney General
GRD:251
OPINION NUMBER 89-190
April 13, 1989
90-A-2 — PUBLIC FUNDS — Loan, Pledge or Grants
Art. VIZ. S14 of La. Constitution
Retroactive pay raises to school employees are unconstitutional gratuities.
Mr. Elwyn Bocz Area Supervisor — Administration K. P. Poirrier, Ed.D. Superintendent St. James Parish School Board Lutcher, Louisiana 70071
Dear Mr. Bocz and Dr. Poirrier:
You have requested an opinion as to whether or not the St. James Parish School Board can give a retroactive pay raise to its employees. In our opinion it is well-settled legally that such a retroactive pay-raise is a gratuity which violates Art. VII, S14 of the Louisiana Constitution of 1974.
Art. VII, § 14A of the Constitution prohibits the gratuitous alienation of public property, funds or things. The courts and the Attorney General in opinions have found that prospective compensation for future services in the form of bonuses, incentives or pay raises are not gratuitous :u2 therefore do not violate this provision of the Constitution. Opinions Atty. Gen., No. 76-906; No. 89-112.
Retroactive compensation has not passed this constitutional test. Interpreting the nearly identical constitutional prohibition of the 1921 Constitution, the Third Circuit Court of Appeal ruled: "Payments to be legal must be in the form of salary increases for the future, not extra compensation for past services rendered." McElveen v. Callahan,309 So.2d 379 (La.App. 3rd Cir. 1975). In our opinion this interpretation remains correct of the correlative provision in Art. VII, S14A of the Louisiana Constitution (1974).
Accordingly, the retroactive pay raises proposed in your opinion request are unconstitutional.
Trusting this to be of sufficient information. I am
Sincerely,
 WILLIAM J. GUSTED JR. Attorney General
 BY:__________________________ Charles J. Yeager Assistant Attorney General
CJY:tm
OPINION NUMBER 88-344
October 24, 1988
58 — Labor — Labor law, Unions La.C.C.P. Art. 7. Sec. 14 (1974)
Retroactive compensation to city employees for services previously compensated by the city is prohibited by Art. 7. Sec. 14. of the 1974 Louisiana Constitution.
Mr. Robert L. Simpson City Attorney City of Harahan 6437 Jefferson Highway Harahan, Louisiana 70123
Dear Mr. Simpson:
A joint request for an Attorney General's opinion has been made by you and Harahan Police Chief, John Doyle. The issue is whether the Harahan Board of Aldermen may, in 1988, compensate three (3) city employees for work performed by the employees in 1987. It is the opinion of this office that retroactive compensation to city employees for services previously compensated by the city is prohibited by Article 7, Sec. 14 of the 1974 Louisiana Constitution.
According to the facts presented to this office three (3) city employees worked 30 hours a week prior to 1987. In 1987, a new mayor increased the work hours of these employees to 35 hours per week. These employees received no increase in salary for the additional work hours. Two (2) other city employees hired in 1987 by the new mayor were also required to work 35 hours per week at the compensation rate paid prior to 1987 for 30 hours per week. In 1988 the mayor resigned. His successor reduced the affected employees' work week to 30 hours per week. There was no change in the compensation. Later, in 1988 the Harahan Board of Aldermen voted to authorize payment of additional compensation to pay for the extra five hours per week worked by the employees. The additional compensation was determined by multiplying the number of additional hours by a rate per hour.
Article 7, Sec. 14 provides in part:
 "(A) Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
The legality of retroactive compensation to public employees was reviewed by the courts in McElveen vs. Callahan, 309 So.2d 379 (C.A. 3, 1975); Writ denied 313 So.2d 602 (La., 1975). The McElveen v. Callahan
case involved retroactive payment by a local marshal to three (3) of his employees. The compensation was given for performing extra duties and working overtime. The Court of Appeals, citing Opinions of the Attorney General, held that:
 "The payment of bonuses to public employees is illegal, whether paid directly as such or disguised as payment for extra duties or overtime. Payments to be legal must be in the form of salary increases for the future, not extra compensation for past services rendered . . ."
Public officials have the discretion to set the number of hours per week that public employees must work. Absent any agreement with the employees no overtime or extra compensation must be paid if the number of work hours per week do not exceed 40 hours per week. In the present situation, the three (3) city employees were required to work 35 hours a week in 1987, rather than 30 hours per week for the same compensation. The decision of the previous mayor to increase the number of work hours without increasing compensation was one he was authorized to make. Since the employees have received compensation for the hours they worked in 1987 they cannot receive any additional compensation.
This office has consistently ruled that retroactive pay for services previously rendered and compensated violates Art. 7, Sect. 14 of the Constitution. See Op.Atty.Gen, #80-806 and #86-639, copies of which are attached to this opinion. In conclusion, the Harahan Board of Aldermen is prohibited by the Constitution from giving extra compensation to the three (3) city employees for work they were compensated for by their 1987 salary.
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
JMM:rmh
 CITY OF BOGALUSA, LOUISIANA SPECIAL REVENUE FUND EMPLOYEE PAY RAISE SALES TAX FUND STATEMENT OF REVENUES, EXPENDITURES, AND CHANGES IN FUND BALANCE — BUDGET (GAAP BASIS) AND ACTUAL Year Ended December 31, 1987 With Comparative Actual Amounts for Year Ended December 31, 1986 1987 ________________________________________
 Variance 
Favorable 1986 Budget Actual (Unfavorable) Actual
Revenues: Taxes 
Sales taxes $569,655 $567,006 $(2,649) $568,248 Penalties and interest on delinquent taxes — 3,390 3,390 2,113 Miscellaneous revenues — Interest on investments 2,000 2.192 192 1,066 _________ ________ ______ _________ Total revenues $571,655 $572.588 $933 $571,427 _________ ________ ______ _________ Expenditures: General government — Miscellaneous $— $130 $(130) $8 _________ ________ _______ _________ Excess (deficiency) of revenues over expenditures $571,655 $572,458 $803 $571,419
Other uses: Operating transfer to 
General and Utility Funds $(603,000) $(595,177) $7,823 $(477,870) __________ __________ ______ __________ Excess (deficiency) of revenues over expenditures and other uses $(31,345) $(22,719) $8,626 $93,549
Fund balance, beginning 94.431 94.431 — 882 ________ _______ ______ _______ Fund balance, ending $63,086 $71,712 $8,626 $94,431 ________ _______ ______ _______
The accompanying notes are an integral part of this statement.
 SPECIAL REVENUE FUNDS
State Revenue Fund — To account for the receipt and subsequent expenditure of revenue sharing funds received from the State of Louisiana.
Federal Revenue Sharing Fund — To account for the receipt and subsequent expenditure of revenue sharing funds received from the Federal government.
Industrial Complex Sales Tax Fund — To account for the receipt of a 1/2 cent sales and use tax. The proceeds are dedicated to the purpose of improving and maintaining the City's industrial park.
Employee Pay Raise Sales Tax Fund — To account for the receipt of a 1/2 cent sales and use tax. The proceeds are dedicated to the purpose of paying-salaries and benefits of City employees.
Street Improvement Sales Tax Fund — To account for the receipt of 25% of a one cent sales and use tax. The proceeds are dedicated to street and drainage repair, maintenance, operation and additions.
Water and Sewer Sales Tax Fund — To account for the receipt of 15% of a one cent sales and use tax. The proceeds are dedicated to water and sewer repair, maintenance, operation and additions.
Capital Improvement Sales Tax Fund — To account for the receipt of 15% of a one cent sales and use tax. The proceeds are dedicated to the acquisition, operation, and maintenance of land, buildings, and equipment.
Industrial Park Rent Fund — To account for the receipt of rent from the Industrial Park. This revenue is transferred to the general fund and is without restriction.
Hurricane Disaster Grant Fund — To account for the receipt and expenditure of a grant from the Interim Emergency Board, State of Louisiana and a grant from the U.S. Department of Housing and Urban Development. The purpose of the grants was to repair certain water and sewer lines damaged by Hurricane Elena.
LCLE Subgrant Fund — To account for the receipt and expenditure of a state grant from the Louisiana Commission on Law Enforcement and Administration of Criminal Justice. The funds are dedicated to the police department for training and certain types of equipment purchases.
Summer Food Program Fund — To account for the receipt and expenditure from a Federal Grant dedicated to summer feeding program for children at various sites throughout the city. Breakfast and lunch are served during June, July and August to eligible children. At the beginning of each month a claim for reimbursement is filed for that month. The sponsor receives reimbursement from the Department of Education for operating and administrative expenses within certain limits set by
 CITY OF BOGALUSA, LOUISIANA GENERAL FUND STATEMENT OF EXPENDITURES COMPARED TO BUDGET (GAAP BASIS) Year Ended December 31, 1987 With Comparative Actual Amounts for Year Ended December 31. 1986 1987
Variance 
Favorable 1986 Budget Actual (Unfavorable) Actual
 City zoning $— $562 $(562) $— Utilities 250,000 253,598 (3,598) 263,261 Miscellaneous 20,000 20,763 (763) 35.250 Total miscellaneous $882,000 $944,141 $(62,141) $996,821
 Total general government $1,388,266 $1,446,136 $(57,870) $1,448,348
Public safety: Police: Salaries and wages $759,075 $777,856 $(18,781) $702,888 Gas and oil 30,000 28,709 1,291 31,649 Employee group insurance 38,000 38,867 (867) 43,527 Salary of department head 29,500 30,137 (637) 25,691 Supplies and expense 20,000 17,795 2,205 26,637 School patrol 18,500 20,720 (2,220) 18,300 Prepaid uniform allowance 8,000 8,400 (400) 8,000 Care of prisoners 2,000 3,507 (1,507) 1,712 Repairs to equipment and radios 4,000 4,781 (781) 4,743 Narcotic dog 675 48 627 127 Travel 2,000 1,533 467 4,678 Special investigations 2,000 997 1,003 830 Narcotics investigations 6,000 1,841 4,159 5,572 Education 5,000 4,953 47 511 Maintenance of traffic lights 250 85 165 188 ________ ________ _________ ________ Total police $925,000 $940,229 $(15.229) $875.053 ________ ________ _________ ________ Fire: Salaries and wages $639,242 $633,780 $5,462 $608,892
The accompanying notes are an integral part of this statement.
The following ordinance was presented by Maxie C. Campbell, who moved its adoption, and was seconded by Cecil Williams:
 ORDINANCE NO. 909
 An ordinance levying within the City of Bogalusa, State of Louisiana, a tax of one-half of a per cent (1/2%) upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and upon the sale of services, all as defined herein; defining the terms "tangible personal property", "dealers", "retail sales", "sales price", "cost price", "lease or "rental", "storage", "use" "sales of services", and other terms used herein; levying and providing for the assessment, collection, payment and dedication of such tax and the purposes for which the proceeds of said tax may be expended; providing for an adequate remedy at law; defining violations of the provisions of the ordinance and prescribing penalties therefor; providing for rules and regulations for the enforcement of the provisions of this ordinance and the collection of the tax levied thereby; providing that any part of this ordinance which may be held invalid or unconstitutional shall not affect or impair any other provision thereof; and repealing all resolutions and ordinances or parts thereof as may conflict herewith.
WHEREAS, under the provisions of Article VI, Section 29 (A) of the Constitution of the State of Louisiana of 1974, and other constitutional and statutory authority supplemental thereto, the Authority (hereinafter defined), is authorized to levy and collect within the Authority an additional tax of one-half of one per cent (1/2%) upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and upon the sale of services as defined in Sections 301 — 317, inclusive, of Title 47 of the Louisiana Revised Statutes of 1950 (R.S. 47:301 — 47:317); and
WHEREAS, pursuant to the requirements of Article VI, Section 29 (A) of the constitution of the State of Louisiana of 1974, and other constitutional and statutory authority supplemental thereto, a special election was held in the Authority on Saturday, September 16, 1978, to authorize the levy and collection of a tax, and the proposition, attached hereto as Exhibit "A", was submitted at said election and duly approved by a majority of the qualified electors voting in said election; and
SECTION 15.02. A certified copy of this ordinance shall be recorded as soon as possible in the Mortgage Records of the Parish of Washington, Louisiana.
SECTION 15.03. That this matter being one affecting the public peace, health and safety of the citizens and taxpayers of the Authority and it being necessary that the tax herein levied be collected as soon as possible in order to pay the salaries of public employees and to enhance the economy of the community, this ordinance be and the same is hereby declared to be an emergency ordinance and shall be voted on as such, and shall be in full force and effect immediately upon its adoption.
This ordinance having been read and considered by sections at a public meeting of the Governing Body, was then submitted to an official vote as a whole, the vote thereon being as follows:
YEAS: Louis Rawls, Maxie C. Campbell, Carl W. Jarrell, Cecil W. Williams
NAYS: None.
ABSENT: Houston S. Jenkins
And the ordinance was declared adopted on this, the 10th day of October, 1978.
 _______________________ ____________________ City Clerk Mayor
 Exhibit A
 PROPOSITION
Shall the City of Bogalusa, State of Louisiana (the "City"), under the provisions of Article VI, Section 29 (A) of the Constitution of the State of Louisiana of 1974, and other constitutional and statutory authority supplemental thereto, be authorized to levy and collect, and adopt an ordinance providing for such levy and collection, a tax of one-half of one per cent (1/2%) upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the City, all as defined in La.R.S. 47:301 to La.R.S. 47:317, inclusive, with the proceeds of said tax, after payment of the reasonable and necessary expenses of collecting and administering the tax, to be dedicated and used for the purpose of paying salaries, and benefits in connection therewith, for City employees, said tax to be in addition to the one and one-half per cent (1-1/2%) sales and use taxes presently being levied and collected by the City?
OPINION NUMBER 86-201
April 1, 1986
46-A FEES COSTS 22 DISTRICT PROSECUTING ATTORNEYS 90-A-1 PUBLIC FUNDS CONTRACTS 90-A-2 PUBLIC FUNDS; LOAN-PLEDGE OR GRANTS
Public employees of district attorneys' offices may not receive retroactive salary increases.
 ART. VII § 14 — La. Const. of 1974 R.S. 16:15
Mr. Robert E. Harroun, III General Counsel to the Legislative Auditor Post Office Box 94397 Baton Rouge, Louisiana 70804-9397
Dear Mr. Harroun:
We are in receipt of your letter dated March 18, 1986, in which you requested an opinion as to whether it is permissible for district attorneys to issue lump sum payments during the month of December of each year from the fund, or whether those payments must be in the form of salary increases for future months.
R.S. 16:15, which establishes a special fund into which the district attorneys deposit fees in connection with the collection and processing of the issuance of worthless checks provides:
 E. Fees collected under this Section shall be deposited in a special fund to be administered by the district attorney. Expenditures from this fund shall be at the sole discretion of the district attorney and may be used only to defray the salaries and expenses of the office of the district attorney, but in no event may the district attorney supplement his or her own salary fund from this fund. Nothing in this Section shall be construed to decrease the total salaries, expenses, and allowances which the office of a district attorney is receiving at the time this Section takes effect. (Emphasis supplied)
The aforestated statute authorizes the district attorney's office to use the funds collected pursuant to the Collection of worthless checks to defray the salaries and expenses of the office of the district attorney.
However, Louisiana Constitution Article VII, § 14 states:
 § 14. Donation, Loan, or Pledge of Public Credit
 Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise. (Emphasis supplied)
Article VII, § 14 mandates that any funds, credit, property or things of value of the state or any political subdivision shall not be donated.
Thus, the district attorneys' offices throughout the state are political subdivisions of the state and are prohibited from donating public funds, which funds are collected through the collection process of worthless checks and are funds of the state.
In McElveen v. Callahan, 309 So.2d 379 (1975), the Court of Appeal held, "Bonus payments to public employees, to be legal, must be in the form of salary increases for the future, not extra compensation for past services rendered." Clearly, the Court holds that payments — extra compensation — for past services constitute bonuses — donations — and are prohibited pursuant to Louisiana Constitution Article VII, Section 14. Additionally, the court added, "Payment of bonuses to public employees is illegal, whether paid directly as such or disguised as payments for extra duties or overtime." Id. The Attorney General's Office has consistently held that bonus payments for past services constitute donations and are thereby prohibited by the Constitution of this state.
Furthermore, this office has held that in order for bonus payments to public employees to be legal, those payments must be in the form of salary increases for the future; not extra compensation for past services rendered. (Attorney General Opinions 79-1352, 1948-50 p. 538, 1946-48 p. 752, 1946-48 p. 470, 1942-44 p. 1583).
Therefore, it is the opinion of this office that employees of district attorneys' offices may not receive retroactive salary increases.
Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ____________________ KENNETH C. DEJEAN Chief Counsel
KCD/lg
OPINION NUMBER 77-226
February 8, 1977
71 Municipalities 90-A-2 Public Funds-Loan, Pledge or Donation Town may not grant salary increase to employees for one month each year in lieu of bonus. Such increase would be a prohibited donation. La. Const. of 1974, Art. VII, § 14 Op. 75-124, 76-906, 76-1492
Honorable Eddie Knoll District Attorney Parish of Avoyelles Marksville, Louisiana 71351
Dear Mr. Knoll:
We are writing in response to your request for an opinion concerning the granting of salary increases to employees of the Town of Simmesport.
You have asked whether the Town of Simmesport could increase the salary of its employees for the month of December only, in lieu of a Christmas bonus.
In response we direct your attention to Opinion Numbers 75-124, 76-906 and 76-1492, copies of which are enclosed, in which we have discussed the constitutional principles involved in your question and concluded that public employees could not be given bonuses pursuant to Article VII, Section 14 (A) of the 1974 Constitution.
The grant of a salary increase for one month only would be tantamount to the giving of a bonus. It is axiomatic that one may not accomplish indirectly what may not be accomplished directly.
Therefore, it is our opinion that the Town of Simmesport cannot raise the salary of its employees for one month at the end of each year because such raise would be a donation prohibited by Article VII, Section 14 (A) of the 1974 Constitution. If the town wishes to reward its employees for their services, it may grant them permanent salary increases.
If we can be of further assistance, please do not hesitate to contact this office.
Very truly yours,
 WILLIAM J. GUSTE, JR. ATTORNEY GENERAL
 BY: ___________________________ (Mrs.) BARBARA S. BRUCKNER Staff Attorney
BSB/mm Enclosures